St. Louis & San Francisco Railroad Company *v.* Williams.

Opinion delivered February 27, 1911.

1. Negligence—intervening act of child.—Where an explosive is carelessly left where it is picked up by a child incapable of committing an act of negligence and carried to his companion who explodes it, and is injured, the causal connection of the original act of negligence in leaving the explosive is not broken by any intervening act of negligence and is the proximate cause of the injury. (Page 76.)

2. SAME—USE OF DANGEROUS SUBSTANCE.—The necessary use of a dangerous substance, such as an explosive, in a careful manner in the operation of a lawful business, does not constitute negligence. (Page 77.)

3. RAILROADS—NEGLIGENCE IN USE OF TRACK TORPEDO.—Where a railway employee placed a torpedo upon the track as the customary signal to an expected train, and a few minutes thereafter, before the train passed, a little boy picked it up, and his brother was injured by its explosion, no negligence on the part of the railway company was shown. (Page 80.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1. A railroad company's use of its right of way at all places other than public crossings is exclusive at all times and for all purposes. 49 Ark. 257, 263; 2 Am. & Eng. R. Cas. 4-6; 76 Am. St. Rep. 163; 20 S. W. 380; 7 Fed. 78; 45 Am. Rep. 365; 8 Am. & Eng. R. Cas. 217; 70 Atl. 826.

2. A railroad company owes no duty to a trespasser on its track and right of way except not to wantonly injure him after his presence has been discovered. 123 S. W. 1182; 69 Ark. 380; 64 Ark. 364; 62 Ark. 235. An infant may trespass as well as an adult, but the company owes to the infant no greater duty than it does to an adult. 36 Ark. 39; 15 S. W. 1057; 110 S. W. 329; 111 S. W. 712; 116 S. W. 557; 104 N. W. 827; 47 Fed. 689; 143 Fed. 260; 7 N. E. 866. A child on a railroad track is a trespasser, though not old enough to be guilty of contributory negligence. 37 S. E. 794; 81 S. W. 657; 4 Atl. 106; 44 Atl. 809; 70 Atl. 826. The "turn table case" is an exception to the rule that the landowner owes no duty to an infant trespasser other than that owed to an adult, but this exception does not extend to the use of torpedoes by railroads in the operation of their trains. In their use there must be proof that they were negligently placed, or a state of facts proved from which negligence might reasonably be inferred. 32 Am. & Eng. R. Cas. 37; 44 *Id.* 647; 51 Atl. 1070; 15 *Id.* 414, 19 S. C. 20; 70 S. W. 830.

3. The causal connection having been broken, the injury to the plaintiff was not the proximate result of the placing of the torpedo on the track. 87 Ark. 576; 21 Am. & Eng. R. Cas. (N. S.) 646. Appellant had the right to presume that appellee's

parents would discharge their duty by preventing their children from removing the torpedoes from the rail, and by warning them of their dangerous nature. 2 Am. & Eng. R. Cas. 4, 6; *Id.* 7; 44 Atl. 809; 70 Atl. 826; 110 S. W. 329; 111 S. W. 712; 116 S. W. 557. Their act in permitting the child to go unwarned broke the causal connection, as did also the act of the other boy in exploding the torpedo. 124 Fed. 113, 119, 120, and authorities cited; 43 Atl. 539; 113 Mass. 507.

4. The torpedo, under the allegations and evidence, was properly placed, and there was no allegation nor proof that it was an improper instrument, or that it was improper to use it on the rails of appellant at the place where it was used. Plaintiff had no right to search for imaginary grounds not contained in the complaint as a basis for recovery, and the court will not treat it as amended. 70 Ark. 232.

*Sam R. Chew,* for appellee.

The torpedo was placed, as the record shows, at a place where appellant knew that children were accustomed to assemble and play daily; and it knew also that these torpedoes were attractive to children and likely to be picked up by them, and that they were likely thereby to be injured. Persons using explosives are held to a high degree of care and caution, and they will be held to answer in damages for injuries resulting from the wrongful or careless handling of the same, where the injuries might reasonably be expected to flow from such wrongful or careless handling. 1 Thompson on Neg. § § 758, 759; Shearman & Redfield, Negligence, § 688; 45 O. St. 11; 87 Ark. 580.

2. The proximate cause of the injury was the placing and leaving the torpedo where it could be picked up by a child or other irresponsible person. Its being carried away and its ultimate explosion was what might have been reasonably expected. "Where the injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause." Bishop, Noncontract Law, § 39; *Id.* § 45; 108 Pac. 140, 27 L. R. A. (N. S.) 884; 73 Ark. 112; 89 Ark. 581; 129 S. W. (Ark.) 78.

McCulloch, C. J. The plaintiff, J. C. Williams, then 11 years of age, was injured by the explosion of a torpedo picked

up on the railroad track of defendant by his younger brother, Ellis Williams, and sues to recover damages. The boys lived with their parents a short distance from the railroad track in the city of Fayetteville, Ark. They saw the brakeman of a train place the torpedo on the track, and the younger one went out on the track, and picked it up, and carried it to plaintiff, requesting him to "mash it," which he proceeded to do, placing it on a rock and striking it with an axe. Some of the particles struck plaintiff in the eye and destroyed the sight.

There is no dispute as to the material facts. The defendant operates a branch line, known as the St. Paul branch, which runs east from the main line at Fayette Junction, about two miles south of the passenger station at Fayetteville. Another branch, called the O. & C., runs west, leaving the main line a short distance south of the station. The trains from these branches come in on the main track to reach the Fayetteville station, which is used by all of defendant's trains on the main line as well as on the branch lines. The track between Fayette Junction and the Fayetteville station has frequent curves, and there are obstructions which prevent a view up and down the track for any considerable distance.

When the trains come in from the branch lines, while using the main line at the station for discharging passengers, baggage, express, etc., it is necessary to protect them by the use of torpedoes from other trains likely to come in. The undisputed evidence shows that this has been the custom for many years, and that it is considered necessary by those who have been operating trains there. It is explained that where a brakeman gets off to protect a train with a flag it is necessary to use a torpedo for protection while he goes back to his train.

The track near the place where the plaintiff was injured was on a high dump, and is curved, so that it has always been found necessary to place a torpedo at that place. It is not a crossing, but there was testimony tending to show that people walk the track a good deal along there, and that children play on or about the track.

On the occasion in question the mixed train from the St. Paul branch came in, being due at 3:45 P. M., and when it came up the main line Raedles, a brakeman, got off and placed a tor-

pedo on the track as usual, leaving it there when he was called to
his train as a signal to the other incoming trains.   A train from
the O. & C. branch was due at 3:55, and another train on the main
line was due from the south at 4:10 P. M.   It was always con-
sidered necessary to put a torpedo on the track at that place to
protect the St. Paul train from those trains while it was discharg-
ing passengers, baggage, etc., at the station and getting back to
the switch.   Raedles used a torpedo of approved pattern com-
monly in use.   It had a lead strip attached to it, by which it was
fastened to the rail so that it would be exploded by the wheels
of a passing train.

The boys saw Raedles put the torpedo on the track, and in
a short time thereafter, about fifteen minutes, the younger boy,
Ellis, went over and picked it up and carried it to his brother,
who exploded it, as already stated.   The injury occurred in a
very unusual and unexpected manner.   Witnesses stated that
torpedoes had been placed along there for ten years or longer,
and that an accident had never before happened on that account.
The use of torpedoes in that way is shown to be customary in
railroading, yet experienced railroad men testified that they had
never heard of any one being injured as a result of that practice.

We need not spend any time in discussing the question of
contributory negligence, or whether the negligence of defendant's
servants, if there was any negligence, was the proximate cause of
the injury.   The question of negligence of the plaintiff in explod-
ing the torpedo was properly submitted to the jury, and, consider-
ing the plaintiff's age and inexperience, we think the jury were
justified in finding that he was not guilty of negligence.   In the
case of *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576, the court
distinctly recognized the principle that negligence in unnecessarily
leaving an explosive exposed so that children could have access
to it would be the proximate cause of an injury resulting there-
from under circumstances similar to the facts of this case; citing
*Harriman* v. *Pittsburg, C. & St. L. R. Co.,* 45 O. St. 11, 12 N. E.
451.   The court there held that where the explosive was picked
up by a child incapable of committing an act of negligence, and
he immediately carried it to his companion who exploded it, the
causal connection with the original act of negligence in leaving
the explosive exposed was not broken by an intervening act of

negligence, and it was a result to be reasonably anticipated, so as to make the injury the proximate result of the original act of negligence.

The real question with which we must deal in this case is whether or not there is any evidence of negligence on the part of defendant's servants in leaving the torpedo on the track. Did they violate any duty which they owed to children who might come on the track?

Cases may readily be found where it is held to be negligence to leave explosives or other dangerous substances exposed so that injury may result therefrom. These are cases, however, where the method of using the substance is found to be negligent, or where there is negligence in unnecessarily leaving the substance exposed. We are not aware that any court has ever held that the necessary use in a careful manner of a dangerous substance in the operation of a lawful business constitutes negligence. There are many legitimate enterprises, the operation of which is necessarily dangerous. This is especially true of the operation of a railroad, which is necessarily a place of danger at all times. The locomotives, standing cars, handcars, cattle guards, turntables, and numerous other things which could be mentioned are in a sense dangerous; yet they are necessary, and may be used without rendering the company liable for damages. It is only the negligent use, or use in a negligent manner, which is actionable when injury results.

Railroad companies have the right to the exclusive possession of their own premises, including the right-of-way, except at crossings or about stations where people have a right to go. The servants of the company are not required to anticipate the presence of trespassers except as to keeping a lookout in the operation of trains, which is now required by statute. Children may be trespassers the same as adults, and, except in the operation of trains where the lookout statute applies, servants of the company are not required to anticipate their presence where they have no right to be.

What is known as the doctrine of the "turntable cases" forms an exception to this rule, but that is where an owner permits to remain unguarded on his premises something dangerous which is attractive to children and from which an injury may reasonably

be anticipated.    The doctrine is stated by the court in *Brinkley Car Co.* v. *Cooper,* 60 Ark. 545, as follows: "The owner of land is not required to provide against remote and improbable injuries to children trespassing thereon.    But he is liable for injuries to children trespassing upon his private grounds when it is known to him that they are accustomed to go upon it, and that, from the peculiar nature, and exposed and open condition, of something thereon, which is attractive to children, he ought reasonably to anticipate such an injury to a child as that which actually occurs."

The doctrine of those cases proceeds entirely on the theory of negligence in using, or unnecessarily leaving exposed, the dangerous substance or machinery.    In the Cooper case just referred to, the charge of negligence was that the defendant allowed to remain unguarded on its premises, which were frequented by children, a pool of hot water concealed by trash and bark, and the plaintiff, a child six years old, unwittingly walked into it and was scalded.    When the case came back to this court on second appeal (*Brinkley Car. Co.* v. *Cooper,* 70 Ark. 331), Judge RID-DICK, delivering the opinion, said: "We hold that if the company owning the premises had notice that children did frequent the place of this pool, or were from the nature of the surroundings likely to do so, and if it carelessly left a pool of hot water there concealed in such a way that one would reasonably expect it to occasion injury to such children, the company would be liable for damages to a boy who by reason of its concealed nature walked into the pool of hot water and was burned."

The doctrine was first announced by the Supreme Court of the United States in *Railroad Company* v. *Stout,* 17 Wall. 657, a case where a child six years of age got his foot mashed while playing with a turntable on the premises of a railroad company. The court stated the facts and the rule applicable thereto as follows:

"As it was in fact on this occasion, so it was to be expected, that the amusement of the boys would have been found in turning this table while they were on it or about it.    This could certainly have been prevented by locking the turntable when not in use by the company.    It was not shown that this would cause any considerable expense or inconvenience to the defendant.    It could probably have been prevented by the repair of the broken latch.

This was a heavy catch which, by dropping into a socket, prevented the revolution of the table. There had been one on this table weighing some eight or ten pounds, but it had been broken off and had not been replaced. It was proved to have been usual with railroad companies to have upon their turntables a latch or bolt or some similar instrument. The jury may well have believed that if the defendant had incurred the trifling expense of replacing this latch, and had taken the slight trouble of putting it in its place, these very small boys would not have taken the pains to lift it out, and thus the whole difficulty have been avoided. Thus reasoning, the jury would have reached the conclusion that the defendant had omitted the care and attention it ought to have given, that it was negligent, and that its negligence caused the injury to the plaintiff."

In *Catlett* v. *Railway Co.*, 57 Ark. 461, a boy sued for damages received while he was attempting to swing on the side of a moving train in the railroad yards at Wynne, Ark. The boys were accustomed to steal rides on the trains at that place, and this was well known to the trainmen, who took no steps to prevent it. Sometimes they paid no attention to boys riding, and sometimes they made them get off. The doctrine just referred to was urged by able counsel, but the court rejected it. Chief Justice Cockrill, delivering the opinion of the court, said:

"The appellant argues that a slow moving train is dangerous machinery, alluring to boys; and that it is therefore negligent of the company to fail to take precaution to keep them off such trains. That is the argument made to sustain a class of cases known as the 'turntable cases,' the leading one of which is *Railroad Co.* v. *Stout*, 17 Wall. 657. Whatever its merits may be, it has never been extended to such length as to control a case like this. The youth of the person injured will sometimes excuse him from concurring negligence, but no amount of youthful recklessness can supply the place of proof of negligence on the part of a defendant sought to be charged on account of negligence." The point of that case undoubtedly is that there must have been some act of negligence in the use of the dangerous substance or machinery, or in leaving it unguarded when not in use. Other cases illustrate the doctrine in the same way. *Louisville & N. Rd. Co.* v. *Hart* (Ky.) 70 S. W. 830; *Pittsburg, C. & St. Louis*

*Ry. Co.* v. *Shields,* 44 Am. & Eng. R. Cas. 647; *Harriman* v. *Pitts-burg, C. & St. L. Ry. Co., supra; Olson* v. *Gill Home Investment Co.* (Wash.), 108 Pac. 140, 27 L. R. A. (N. S.) 884.

In the Harriman case, above cited, which is strongly relied on by learned counsel for plaintiff, the trial court sustained a demurrer to the complaint, which alleged that the servants of the railway company "wantonly placed said torpedoes upon the track of its road in an exposed place where, if left undestroyed and unguarded, they would be likely to cause injury to others. That there was no reason for making use of said torpedoes at said time or place, nor was there any necessity of giving danger signals; but the same were used in mere wantonness and with a view that said train, on being moved forward, would pass over and explode the same. That said defendant, so using said torpedoes in the manner aforesaid, so carelessly and negligently conducted itself in the management and care of its road and management of its said train that it negligently and carelessly failed to explode and destroy all of said torpedoes so placed on its track, and negligently and carelessly left upon its road, exposed and unexploded and in plain view, one of said torpedoes at a point and place upon its road over which the inhabitants living along the line of said road, and other persons, were for years daily accustomed to travel and pass, and over which children were accustomed to go without hindrance; and all with the full knowledge of defendant. And that said defendant negligently, carelessly, and in wilful disregard of the safety of those whom the defendant well knew were in the daily habit of using said road as a pathway, permitted said unexploded torpedo to remain upon its road undestroyed and unguarded from the reach and observation of all passersby."

The Supreme Court held that the complaint stated a cause of action, and that the demurrer should have been overruled.

Now, applying the law announced in the foregoing cases to the facts of the present case, it is readily seen that no case of negligence has been made out against defendant. Its servants were using the torpedo in the customary way as a signal to an expected train. No negligence is shown in placing it there or in leaving it after the necessity for its use had ceased. The little boy Ellis picked up the torpedo a few minutes after it was placed there, and before the expected train came along to explode it.

To hold that under those circumstances the servants of the company were guilty of negligence would be to deny the company the right to use torpedoes at all. The undisputed evidence shows that it was necessary for the safety of trains to use them at the time and place named, and no negligence is shown in the method of using them or that they were left unguarded after the necessity for their use ceased.

The case should not have been submitted to the jury. The judgment must therefore be reversed; and, as the facts were fully developed in the trial, no useful purpose will be served in remanding for a new trial. Reversed and dismissed.