## NASHVILLE LUMBER COMPANY v. BUSBEE.

### Opinion delivered June 5, 1911.

1. DEATH—DAMAGES—CONTRIBUTORY NEGLIGENCE OF PARENT.—Where an infant was killed through the wrongful act of defendant, his administrator was entitled to recover damages for his conscious suffering between the time of his injury and death; and it is no defense that decedent's father, who, as the sole distributee of his estate, was entitled to receive same, was guilty of negligence that contributed to his injury and death. (Page 85.)

2. NEGLIGENCE—"ATTRACTIVE NUISANCE" DOCTRINE.—Where an owner permits to remain unguarded on his premises anything dangerous which is attractive to children and from which injury may reasonably be anticipated, he will be liable if a child is injured thereby. (Page 88.)

3. SAME—WHEN PREMISES ATTRACTIVE.—Whether or not premises are sufficiently attractive to entice children into danger, and to suggest to the owner the probability of injury to them, is a question for the jury. (Page 92.)

4. SAME—CAPACITY OF INFANT.—It is usually a question for the jury whether the injured child had sufficient mental capacity to know and appreciate the dangerous character of the machinery by which he was injured. (Page 92.)

5. SAME—CAPACITY OF INFANT.—Even though a child eight years old was warned of the danger from certain machinery, it was still a question for the jury whether, considering his age and intelligence, he had sufficient mental capacity to appreciate the danger after such warning. (Page 92.)

6. SAME—ATTRACTIVE NUISANCE DOCTRINE APPLIED.—There was evidence that defendant ran a box factory; that it left the sprocket wheel and conveyor chain which caused the death of plaintiff's intestate in an open space, unguarded and exposed in such manner that children who congregated there might easily come in contact with them; that intestate had been warned away from the chain, but would not heed the warning; that the chain and sprocket wheel, where exposed, could have been inclosed at an expenditure not exceeding $20, without interfering with the practical operation of the machinery. *Held* that a verdict for the plaintiff will be sustained. (Page 92.)

7. APPEAL AND ERROR—HARMLESS ERROR.—In an action to recover damages for the negligent killing of a child of tender years the exclusion of testimony of defendant's employees that they notified the child's father to "keep him away from the machinery, that he was in danger," was not prejudicial where there was other testimony that decedent was a trespasser. (Page 93.)

8. SAME—HARMLESS ERROR.—It was not prejudicial error, in an action for the negligent killing of a child, to refuse to permit a witness to prove that he had run decedent away from the machinery which caused his death, where other testimony was admitted tending to prove that decedent had been frequently driven away from such machinery. (Page 94.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant owned and operated a box factory in the town of Nashville, Arkansas. It is situated within 200 feet of one of the public streets and in close proximity to one of the residence sections of said town. The structure of the box factory was two stories high, the upper story being used to manufacture box material and the lower or ground floor being used to manufacture various kinds of handles, and also to house the machinery necessary to operate both departments of the factory. The box factory occupied about six acres. The factory was bounded on the west by a number of residences, the company's general office, and its stave mill; on the south by the

dry shed.    To the east and north there were 200 feet of "clear or fire spaces," on which there was nothing except the machine on which the injury occurred and a few pieces of waste lumber. Beginning 14 feet east of the east wall of the box factory, 24 inches from the ground, there was a box or trough, about 12 inches by 12 inches, that extended into and through the building to the west end thereof, rising gradually in that distance, about 18 inches.    In this trough the waste from the upper story falls, which is carried to a burner or furnace on the west side of the building by a drag chain that works in the bottom of the trough, and dumped into the furnace.    This is an endless chain, on which are cleats that drag the waste wood, etc., to the furnace on the west side of the factory.    When the chain gets to the furnace, it turns back in the direction from whence it came, and goes back to the starting point under the trough and revolves on the sprocket wheel or cog wheel which caused the injury.    This wheel is made fast to a line shaft that sets in two posts at the east end of the trough.    This chain is supposed to empty the trash it drags through the trough into the furnace on the west side of the factory, but a great deal of it hangs to the chain and is carried back under the bottom of the trough to the sprocket wheel at the east side of the building, and is deposited on the ground as it goes over said wheel.

For some time prior to the injury boys were in the habit of congregating at the box factory for the purpose of play and to get waste wood or kindling.    There were several signs put up on the premises prohibiting people from trespassing on the premises and warning them about machinery being dangerous; one was inside the box factory, one on the engine room door, and one upstairs.  Except in this manner, it was not shown that any objections were made to the children going on the outside of the box factory where the injury occurred, and there were no obstructions to their so going.    The sprocket wheel and chain were not inclosed.    On the second floor where the box material is manufactured, they used wire and twine strings with which to bind the material when finished into bales.    A good many of these twine strings went into this trough with the other trash and waste from the upper story and became fastened to the chain and went the rounds with it.    On the day of the accident (and about ten minutes before), the deceased

boy, Mack Busbee, passed one Frank Flowers, going in the direction of the box factory.   He (Flowers) did not see the boy any more until he heard him scream, and as he looked around he saw the boy caught in the wheel and go over with the wheel and lodge against the end of the trough.   He ran to him, but, not being able to extricate him, he ran to the engine room and had the machinery stopped.   When this machine was stopped, it was found that the child's arm was wrapped around the line shaft of the wheel one and one-half times like a rope, that the arm was broken in three places and practically pulled from the boy's body; he was lying on his back up against the end of the trough with the chain on top of him drawing across his shoulder, while the prongs or cogs of the wheel were grinding away his back.   He was conscious, and talked to his father and others who came to his rescue, and lived 30 minutes after the accident occurred.   It was also shown by the evidence, that waste wood and trash would sometimes accumulate on the ground at this sprocket wheel to such an extent as to almost hide the wheel.

This suit was brought by appellee as administrator of the estate of Mack Busbee, deceased.   The complaint states:

"That on March 31, 1910, plaintiff was duly appointed administrator of the estate of Mack Busbee, deceased, by the probate court of Howard County.   That deceased died on February 10, 1910, intestate, and plaintiff is now his duly qualified administrator.   That the defendant lumber company is a corporation doing business at Nashville, Arkansas, and operates a saw and planing mill at such place.   That it carelessly and negligently left exposed to the danger of all persons unacquainted with such machinery a certain chain, cog wheel and drag-roller, whereby Mack Busbee, a minor of 8 years, was caught and dragged by said wheel and chain, and his shoulder and other parts of his body was so mangled and bruised that death resulted."

"Plaintiff further says that the defendant knew that this machinery was exposed and dangerous, and that little children were permitted to play around said machinery on its premises. That strings were hanging to said chain which were attractive to children, and that they carelessly and negligently for many days prior to the injury permitted the deceased to come on the

yards and play about their mill and machinery.  That it was the custom of the decedent, together with other boys of like age, to go there and pick up trash and pieces of wood that were being carried off by this chain and take the same to their homes. That decedent was a boy 8 years old, and in good health and sound of mind.  That he suffered from said injuries great physical pain and mental anguish for some hours before he died. That it was because of the negligence and carelessness of the said·Nashville Lumber Company that the said Mack Busbee, the decedent, was permitted to go near to and to be caught by said machinery, and that his death, physical pain and mental anguish were all caused by such negligence, and for the death, physical pain and mental anguish so suffered and endured plaintiff claims damages in the sum of $15,000."

The answer was in separate paragraphs, from one to twelve, inclusive.  It is unnecessary to set them all out.  Appellant denied all allegations of negligence.  It set up that Mack Busbee had been warned to stay away from the mill and machinery, and had many times been driven away from the premises; that he was a trespasser.  It set up contributory negligence of Mack Busbee in entering the premises after being warned to keep off.  It also pleaded contributory negligence on the part of his father, the appellee, as follows:

"8.  Defendant states that the plaintiff, A. L. Busbee, is the father of Mack Busbee, deceased, and the heir and only heir of his estate, and that any judgment rendered in favor of the plaintiff as administrator would be for his benefit, and that said estate owed no debts.

"9.  The plaintiff was guilty of gross negligence in permitting the decedent to come upon its premises or grounds, and in permitting him to play about the premises or machinery at any time, because he knew it was against the rules of the company for any one to come upon or around the premises without permission of the officers of the defendant.

"10.  The plaintiff had been notified by the employees to keep decedent off the premises because no children were permitted to play there, and, after being notified to keep said boy from said premises, negligently permitted decedent to enter the premises of the defendant, and that his injury was received

by the carelessness of plaintiff and the contributory negligence of the decedent."

In paragraph 11½ appellant states that the decedent was a trespasser upon the premises of the defendant, and that it owed him no duty except not to wantonly injure him after his peril was discovered by the defendant or its employees, and that neither the defendant nor its employees knew that he was in a place of danger until the injury occurred.

In paragraph 12 appellant alleged:

"That defendant's premises where the injury occurred were more than 300 yards from any street or public road, were inclosed, and all persons who were not in the employment of the defendant were warned to keep off said premises, and that said chain, cog wheel or drag-roller was not exposed, and was not dangerous in the manner in which it was constructed to any one being around, by or close to it."

Appellee demurred to the answer wherein it pleaded the negligence of the plaintiff and the interest of the plaintiff as is found in paragraphs 8, 9 and 10, because the same do not state facts sufficient to constitute a defense. The court sustained the demurrer to all these paragraphs setting up the negligence of the parents as a defense to this action, to which ruling of the court the defendant excepted.

Errors are assigned in the exclusion of certain testimony, and in the giving and refusing of instructions. The jury returned a verdict in favor of appellee. Judgment was rendered accordingly, and this appeal followed. Other facts stated in opinion.

*Sain & Sain* and *T. D. Crawford*, for appellant.

1. Appellee is the father and sole heir of the decedent, and any judgment recovered by him as administrator would be for his own benefit. His negligence in permitting decedent to go upon appellant's premises, after being warned to keep him away, bars a recovery. 36 Ark. 41; 79 N. Y. Div. 254; 154 Ill. 153; 93 Ga. 381; Tiffany, Death by Wrongful Act, § 69; *Id.* § 70; 55 O. St. 534; 138 Ill. 370; 136 N. C. 119; 92 Pa. 450; 95 Tenn. 18, 37.

2. The court therefore erred in excluding evidence of plaintiff's contributory negligence.

3. "Notwithstanding the immaturity of a minor, if it appears that he knew of the danger, he will be held guilty of contributory negligence." 29 Cyc. 541. The testimony of the witness Wiley that he had run decedent off the chain several times before he was killed was competent to show the exercise of due care on the part of appellant, and to show that the boy was warned of the danger of riding the chain, and as tending to show that he was negligent. 81 Ark. 187; 77 Ark. 398; 63 Ark. 185; 66 Miss. 560; 115 N. Y. 104-108; 49 Am. St. 410; 8 L. R. A. 480; 118 La. 611; 1 Thompson, Neg., § 313; White's Supp., § § 443, 313; 20 Cyc. 537; 177 Mass. 191; 29 Cyc. 539; 39 Minn. 164, 37 Am. & Eng. Rd. Cas. 336. Since the undisputed testimony showed that the boy's death was due solely to his own reckless disobedience, the court ought to have instructed the jury to return a verdict for the defendant. 163 Mass. 507; 85 Ia. 638; 12 Am. St. Rep. 629; 1 Thompson, Neg., § 316; 75 N. Y. App. Div. 553; 9 *Id.* 485; 21 Wend. 620; 39 Hun 445; 132 Ia. 631; 70 Ark. 336.

4. Decedent being a trespasser, appellant owed him no duty except not to injure him wantonly after discovering his presence. 32 Mont. 179; 90 Ark. 278; 57 Ark. 464; 26 L. R. A. (N. S.) 204; 4 *Id.* 804; 93 Ky. 408; 105 S. W. 211; 93 Mo. 422; 12 L. R. A. (O. S.) 216, 140 Pa. St. 475; 114 Pa. St. 321; 69 N. H. 257; *Id.* 577; 17 L. R. A. (N. S.) 136; 23 L. R. A. 724; 102 Tenn. 211; 68 Wis. 271; 54 L. R. A. 315; 55 L. R. A. 622; 86 S. W. 65; 97 N. Y. App. Div. 477; 37 Wash. 355; 116 Mo. App. 559; 83 S. W. 12; 132 Ia. 631. The exception to the general rule as to liability to trespassers, laid down in the "turntable cases," was based upon the ground that the railroad company was maintaining an especially attractive but secretly dangerous piece of machinery without a guard, and that it constituted an implied invitation to children to play with it, and by virtue of this invitation the children were not trespassers. But this doctrine does not apply where the child knew the danger involved; neither can it be claimed that the child was invited where the owner or his servants repeatedly warned and drove him away. 133 Cal. 214; White's Supp., Thomp. Neg., § 1035. The "turntable cases" have been criticised and rejected by many of the courts. See 105 W. Va. 226; 64 N. H. 220; 154 Mass. 349; 145 N. Y. 301; 88 Am. St.

Rep. 887; 113 Ga. 398; 61 N. J. L. 314; *Id.* 635; 90 Tenn. 36; 92 Am. St. Rep. 483; 218 Pa. St. 444; 77 O. St. 235; 16 L. R. A. (N. S.) 1129; 32 Mont. 186.    And in those States where the doctrine prevails the modern tendency is to confine it within narrow limits.    37 Wash. 361; 3 L. R. A. (N. S.) 149; 115 Cal. 345; 152 Mo. 173; 73 Minn. 53; 4 L. R. A. (N. S.) 804; 88 Am. St. Rep. (W. Va.) 884; 104 Ill. App. 667; 128 S. W. 375; 35 Minn. 481; 116 S. W. (Mo.) 559.

*T. C. Jobe* and *W. P. Feazel*, for appellee.

1.    The negligence of the parent cannot be set up as a defense to an action for the benefit of the child's estate.    90 Ark. 490; 77 Ark. 398; 68 Ark. 1; 72 Ark. 1; 59 Ark. 180; Bishop, Non-Contract Law, § 582.    In the event of recovery, the fund would have to be administered under the jurisdiction of the probate court, and it is not within the jurisdiction of the circuit court to determine who are the distributees of the decedent. 47 Ark. 225; 38 Ark. 261; Kirby's Dig., § § 110, 160.    The suit of appellee is not barred on account of contributory negligence on his part.    49 Am. St. Rep. 408, note; 75 Am. St. Rep. 798, note.

2.    If the negligence of the father can not be imputed to the child, it follows that it was not error to exclude the testimony offered to show negligence on his part.    Appellant will not be permitted to urge that the testimony was competent to show that it exercised ordinary care, appellant having tried the case on the theory that decedent was a trespasser.    It cannot now shift its position.    83 Ark. 223; *Id.* 575; *Id.* 10.

3.    The testimony of Wiley was not competent either to show due care on the part of defendant or that the boy was guilty of negligence.    The injury did not occur on the chain nor at the place from which Wiley said he had driven the boy, but at the sprocket or cog wheel on the outside of the building. The act of driving him off the chain inside of the building on a previous day did not tend to show any negligence on the part of decedent at the time of the injury.    81 Ark. 187.    If the boy had been warned to stay off of the yard, and away from the sprocket wheel, this would not avail appellant as a defense unless the boy possessed sufficient intelligence and judgment to understand and appreciate the danger after being so warned.

It was for the jury to determine the capacity of this from the evidence and all the circumstances and whether or not he was guilty of contributory negligence. 81 Ark. 187; 14 Am. St. 490, 596 and note; 60 Ark. 545; 95 Minn. 477; 111 Am. St. 484; 17 Wallace 657; 18 Am. St. 52; 91 Cal. 296; 25 Am. St. 186; 58 Kan. 551; 62 Am. St. 625.

4. Although a child of tender years meeting with injury upon the premises of a private owner may be technically a trespasser, yet the owner is liable if the thing that caused the injury is of such nature as to be attractive to children and has been left exposed and unguarded. If the land of a private owner is in a thickly settled community, and has upon it dangerous machinery, etc., of such character as to be attractive to young children incapable of exercising ordinary care, and he has notice of the attraction for children, or knowledge that they are in the habit of playing around or near the dangerous machinery, he is under obligation to use ordinary care to protect them from injury when coming upon said premises, notwithstanding they may be trespassers. 53 Mich. 507, 51 Am. Rep. 154; 154 Ill. 141, 45 Am. St. 114; 91 Cal. 296, 25 Am. St. 186; 46 Minn. 233, 24 Am. St. 220, 40 Am. Rep. 667, note; 36 Am. St. 835, note; 31 Am. Rep. 209, note; 60 Ark. 545; 70 Ark. 335; 72 Ark. 1; 81 Ark. 187; 58 Kan. 551, 62 Am. St. 625; 95 Minn. 477, 111 Am. St. 483; 116 Ia. 410, 90 N. W. 95; 76 S. C. 539, 121 Am. St. 963; 58 S. C. 80, 18 Am. St. 52; 45 Am. St. 114; 14 Am. St. 595 and cases cited in note; 49 Am. St. 412, note; 125 Ind. 116; 21 Am. St. 211; 36 W. Va. 165; 109 Ind. 179; 18 O. St. 399; 36 Mo. 484; 54 Ill. 482; 83 Pa. St. 332; 64 Miss. 777; 56 Cal. 513; 53 Mich. 507; 81 Ky. 638; 44 Ia. 27.

*Sain & Sain* and *T. D. Crawford,* for appellant.

The testimony of certain employees of appellant that they had notified appellee to keep decedent away from the machinery was competent to prove not only that appellee was guilty of contributory negligence and that decedent was a trespasser, but also that appellant was exercising due care to protect decedent from danger.

The testimony of witness Wiley that he ran decedent off the chain several times just before he was killed was competent

to prove, not only that the boy was a trespasser and negligent, but also that the company was exercising due care. The issues of contributory negligence and of the appellant's diligence were never properly submitted because the trial court erroneously excluded the most material testimony which appellant offered.

WOOD, J., (after stating the facts). First: Appellee, as administrator of the estate of his minor son, deceased, and for the sole benefit of the estate, instituted this action against appellant. He seeks to recover damages for the conscious suffering of his intestate caused by personal injuries which resulted in the latter's death, and which appellee alleges were produced by the negligence of appellant. Conceding the contributory negligence of appellee, can such negligence be pleaded in defense to the action where appellee is the sole beneficiary and distributee of the estate? This is the question presented by the demurrer. In *Wolf* v. *Railway Company*, 55 Ohio St., at p. 533, the court says:

"In those States like Virginia, Louisiana, Iowa, and perhaps others, in which the damages arising from the wrongful death survive and become a part of the estate of the deceased, and are inherited from the estate by the named beneficiaries as heirs, the contributory negligence of such heirs does not constitute a defense to an action brought by an administrator for the recovery of such damages, because the damages are part of the estate, and the estate is cast upon the heirs by operation of law. An estate will vest in the heir and be cast upon him by operation of law, even though the heir wrongfully caused the death of the ancestor for the purpose of obtaining the estate."

Conceding that Mack Busbee was injured through the wrongful act of appellant, whatever suffering he endured, as a result, between the time of his injury and death, was to him a cause of action for damages, which, at his death, survived and could be recovered by his personal representatives for the benefit of the estate of Mack Busbee. Section 6285, Kirby's Dig.; *Davis* v. *Railway*, 53 Ark. 117. These damages belonged to the estate of Mack Busbee. Appellee, as the sole distributee of that estate, acquires his interest in it as heir under the law of

descents and distributions. Section 2636, subdiv. 2, Kirby's Dig.

Contributory negligence of the father cannot be imputed to his infant son, so as to defeat the right of the latter to recover during his life (*Railway Company* v. *Rexroad*, 59 Ark. 180), and at his death the estate of the infant acquired by devolution precisely the same rights that he had during life. *St. Louis, I. M. & S. Ry. Co.* v. *Dawson*, 68 Ark. 1; *Davis* v. *Railway, supra*. The contributory negligence of the father of the intestate can not defeat his personal representative from recovering what belonged to the estate. See *Miles* v. *St. Louis, I. M. & S. Ry. Co.*, 90 Ark. 485. Indeed, the contributory negligence of the father can not be raised in an action by the personal representative to recover damages that belonged to the estate. The only issue in such case is, should the estate recover? The distribution of the assets after recovery is a matter for another tribunal. Kirby's Dig., § § 110, 160; *State* v. *Roth*, 47 Ark. 225; *McDerman* v. *Martin*, 38 Ark. 261.

In other jurisdictions, in similar actions founded upon similar statutes, the rule is as above announced. *Westerfield* v. *Lewis*, 9 So. Rep. 52 (La.); *Wymore* v. *Mahaska County*, 78 Iowa 396; *Norfolk & W. R. Co.* v. *Groseclose's Admr.*, 88 Va. 267. See also *Warren* v. *Manchester St. Ry.*, 47 Atl. Rep. 735 (N. H.) The rule, of course, is quite different where the personal representative sues for the benefit of the father, or the father sues for his own benefit, as next of kin, for the damages accruing at, and by reason of, the death of his infant son under section 6289, Kirby's Dig. In such cases the contributory negligence of the father is a defense. *St. Louis, I. M. & S. Ry. Co.* v. *Dawson*, 68 Ark. *supra*. Although the exact question here was not before the court in that case, since the father, as administrator, was suing both for the benefit of the estate and for his own benefit, yet Judge RIDDICK recognizes the distinction between the two classes of cases and the rule growing out of it. For he says:

"While the negligence of the parent will not be imputed to the child, and the administrator of its estate, if dead, may recover damages for pain and suffering caused by negligence of defendant, notwithstanding the parent himself was guilty of negligence contributory to the injury, yet the rule is dif-

ferent when the parent sues, not for the estate but for his own benefit."

An examination of the cases from other jurisdictions will discover that contributory negligence of the parent has been allowed as a defense, generally, only in actions founded upon statutes similar to sections 6289-90 of Kirby's Dig. (Lord Campbell's Act.) These statutes create a right of action growing out of the death of the party injured by the wrongful act of another. The right does not exist till the death occurs. It accrues then, and is for the damages sustained by the next of kin—the pecuniary loss to them—as a result of the death of the person injured. In cases based upon such statutes the administrator "acts as trustee for those upon whom the statutes confer the right of recovery." He does not in such cases represent and sue for the estate of the deceased, but solely for the pecuniary benefit of those having the right of action under the statute. Sections 6289-90, *supra; Davis* v. *Railway, supra.* Hence, the doctrine that one shall not be allowed to profit by his own negligence should be, and has been, applied in such cases. *O'Shea* v. *Lehigh Valley Railroad Company,* 79 N. Y. App. Div. 254; *Air Line Ry. Co.* v. *Gravitt,* 93 Ga. 369; *Smith* v. *Hestonville, Montana & Fairmount Passenger Ry. Co.,* 11 Pa. St. 450; *Wolf* v. *Lake Erie & W. R. Co.,* 55 Ohio St. 517, S. C., 36 L. R. A. 812; *Chicago* v. *Major,* 18 Ill. 349; *Chicago City Ry. Co.* v. *Wilcox,* 138 Ill. 370; *Pekin* v. *McMahon,* 154 Ill. 141, 153; *Bamberger* v. *Citizens Street Ry. Co.,* 95 Tenn. 18. In the last case, it is said:

"Necessarily, the peculiar provisions of the statute must exercise an important, if not controlling, influence in the decisions of each State."

The court in *Bamberger* v. *St. Ry. Co., supra,* further says: "The right is not strictly a descendible or inheritable right, but one arising out of the special statute, and, as to its scope, is governed by the statute."

The case of *O'Shea* v. *Ry. Co., supra,* also recognizes the difference between the statutes under which the suit was brought in that case and statutes like those under consideration. The Court of Appeals (N. Y.) quotes the same language from *Wolf* v. *Ry. Co.,* as quoted by us in the beginning of this opinion. In *Air Line Ry. Co.* v. *Gravitt, supra,* it is said:

"The sounder view is that entertained by the courts of Iowa and Virginia."

Our conclusion is that where the right of the parent is derived from the child by inheritance under the statutes (sections 2636, 6285, Kirby's Dig.) contributory negligence is not a defense. To so hold is not, as some text writers and judges loosely express it, magnifying form above substance, but rather is it carrying out the law as it is written. If the result is to confer an undeserved benefit upon one whose negligence has been partly instrumental in producing the estate sought to be recovered, that is a matter for the Legislature to deal with, but not for the courts. See *Wymore* v. *Mahaska County*, 78 Iowa 396.

The court, therefore, did not err in sustaining the demurrer to the paragraphs of the answer setting up, as a defense, the contributory negligence of the appellee, nor in excluding evidence tending to show contributory negligence on the part of appellee.

Second: In *Lynch* v. *Nurdin*, Eng. Com. L. Rep. 1 Ad. & Ellis (N. S.), 422, the plaintiff, a child seven years old, in play, got upon a cart that the defendant had negligently left unattended in the street, another child led the horse on, and the plaintiff was thereby injured. In holding that the plaintiff, though a trespasser, could recover, Lord Denman, speaking for the Court of Queen's Bench, among other things, said:

"But the question remains, can the plaintiff here, consistently with the authorities, maintain his action, having been at least equally in fault? The answer is that, supposing that fact ascertained by the jury, but to this extent, that he merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot be permitted to avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child for yielding to that temptation. He has been the real and only cause of the mischief. He has been deficient in ordinary care; the child, acting without prudence or thought, has, however, shown these qualities in as great a degree as he could be expected to possess them. His misconduct bears no proportion to that of the defendant which produced it. For these reasons we think that nothing

appears in the case which can prevent the action from being maintained. It was properly left to the jury, with whose opinion we fully concur."

The above case was cited in 1873 by the Supreme Court of the United States in *Railroad Company* v. *Stout,* 17 Wall. 657, and is the basis for the doctrine of that case. In the latter case the defendant left its turntable in an open space, unattended or unguarded by any servant of the company. It was not locked or fastened, and revolved easily on its axis. The plaintiff, a boy six years of age, and two companions, respectively nine and ten years of age, went to the turntable to play. Two of the boys began to turn it, and the plaintiff, in attempting to get upon it, was injured. The Supreme Court of the United States, following the doctrine of *Lynch* v. *Nurdin, supra,* held that the plaintiff could recover, notwithstanding he was a trespasser. The court, among other things, says: "If, upon any construction which the jury was authorized to draw from it, the conclusion of negligence can be justified, the defendant was not entitled to this order [directed verdict in its favor], and the judgment cannot be disturbed. To express it affirmatively, if from the evidence given it might justly be inferred by the jury that the defendant in the construction, location, management, or condition of its machine had omitted that care and attention to prevent the occurrence of accident which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff. That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the injury which actually occurred to the plaintiff. There was the same liability to injury to him, and no greater, that existed with reference to all children. When the jury learned from the evidence that he had suffered a serious injury by his foot being caught between the fixed rail of the roadbed and the turning rail of the table, they were justified in believing that there was a probability of the occurrence of such accidents. So in looking at the remoteness of the machine from inhabited dwellings, when it was proved to the jury that several boys from the hamlet were at play there on this occasion, and that they had been at play there, on other occasions, and within the observation and to the knowl-

edge of the employees of the defendant, the jury were justified in believing that children would probably resort to it, and that the defendant should have anticipated that such would be the case. As it was in fact on this occasion, so it was to be expected that the amusement of the boys would have been found in turning this table while they were on it or about it. This could certainly have been prevented by locking the turntable when not in use by the company. It was not shown that this would cause any considerable expense or inconvenience to the defendant." The doctrine announced in *Lynch* v. *Nurdin, supra,* because it has been frequently applied by the Supreme Court of the United States, and other courts in this country, in "turntable cases," is often called the doctrine of the "turntable cases," but it is a general rule, and is applicable not alone to turntables, but to machinery, instrumentalities, appliances, or conditions of any kind that are dangerous, and yet calculated to entice children, who may be too young to know of their dangerous character. As was said by the Supreme Court of Minnesota in *Matson* v. *Minn. & N. W. Rd. Co.,* 95 Minn. 477: "The rule is intended for the protection of children of tender age, who from immaturity are incapable of exercising a proper degree of care for their own protection."

Mr. Beach, in his work on Contributory Negligence (§ 141), says that the Supreme Court of Massachusetts "is the only court in this country that has not affirmed *Lynch* v. *Nurdin.*" The Supreme Court of Iowa, in *Edgington* v. *Burlington, C. R. & N. Ry. Co.,* 116 Ia. 410, after quoting the above statement of Mr. Beach, adds: "Our own investigation tends to confirm the assertion although in some States the principle involved has been obscured by inconsistent decisions." Then, after citing a vast array of authorities from many States, the Supreme Court of Iowa continues as follows:

"None of the many precedents we have above cited are turntable cases, and in nearly every instance the injured person was a technical trespasser. They unite, however, in giving vigorous expression to the rule that whether the attractive character of the danger and its unguarded condition are to be construed as an implied invitation to the child to enter upon the property of another, or whether such use of one's own property is a violation of the fundamental doctrine requiring the

owner to have a care that his neighbor suffers no harm at his hands, no man, even upon his own premises, may rightfully expose to the approach of young children a temptation which is likely to attract them into danger, without using care to avoid their injury. It by no means follows that a property owner is an insurer of the safety of the children who come upon his premises. His obligation is simply that which attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety of another member—the obligation of reasonable care. Discharging that obligation, he has done his duty, and assumes no liability, whatever happens; but, failing therein, he is justly responsible for the effects of his negligence."

The rule announced in *Lynch* v. *Nurdin*, or what is called the "turntable doctrine," or the doctrine of the "turntable cases," is sound in principle, and is supported by the great weight of authority in this country. In addition to authorities cited in *Edgington* v. *Burlington, C. R. & N. Ry. Co., supra,* see *Keffe* v. *Milwaukee, etc., R. Co.,* 21 Minn. 207; *Kansas Cent. Ry. Co.* v. *Fitzsimmons,* 22 Kan. 686; *Evansich* v. *Gulf, etc., R. Co.,* 57 Tex. 126; *Koons* v. *St. Louis, etc., R. Co.,* 65 Mo. 592; *Williams* v. *Kansas City, etc., R. Co.,* 96 Mo. 275; *Barrett* v. *So. Pac. Co.,* 91 Cal. 296.

The doctrine was recognized and approved by this court in *Brinkley Car Co.* v. *Cooper,* 60 Ark. 545, where Judge RIDDICK, speaking for the court, said:

"The owner of land is not required to provide against remote, and improbable injuries to children trespassing thereon, but he is liable for injuries to children trespassing upon his private grounds when it is known to him that they are accustomed to go upon it, and that from the particular nature and exposed and open condition of something thereon, which is attractive to children, he ought reasonably to anticipate such injury to children as that which actually occurs." See same case in 70 Ark. 335. (*Brinkley Car Co.* v. *Cooper.*) Again in quite a recent case, *St. Louis & San Francisco R. Co.* v. *Williams,* 98 Ark. 72, the Chief Justice, speaking for the court, after stating the general rule as to trespassers, says: "What is known as the doctrine of the 'turntable cases' forms an exception to the rule." And then he succinctly states the rule of

the "turntable cases" as follows: "Where an owner permits to remain unguarded on his premises something dangerous which is attractive to children and from which an injury may reasonably be anticipated," he may be liable; quoting from *Brinkley Car Co.* v. *Cooper*, as set out above. Under the doctrine of *Lynch* v. *Nurdin*, or the doctrine of the "turntable cases," it was for the jury to determine whether the machinery was dangerous and known to be such because it was attractive to and known to be frequented by children, and whether the appellant was guilty of negligence in leaving the machinery uncovered and unprotected. "Whether or not premises are sufficiently attractive to entice children into danger, and to suggest to the defendant the probability of accident, is a matter to be determined by the jury." 29 Cyc. 636; *Brinkley Car Co.* v. *Cooper, supra.*

It is also usually a question for the jury as to whether or not the injured child has sufficient mental capacity to know and appreciate the dangerous character of the machinery. In other words, it is generally a question for the jury to determine, considering the mental capacity of the child, as to whether or not it is guilty of contributory negligence in coming in contact with the dangerous agency by which it is injured. *Westbrook* v. *Mobile, etc., R. Co.,* 14 Am. St. and note, 587. See *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187; 3 Elliott, on Railroads, § 1261.

Even though a child of tender years may be warned of the danger, it is still a question for the jury as to whether the child, considering its age and intelligence, had sufficient mental capacity to appreciate the danger after such warning.

Without discussing the instructions seriatim, we are of the opinion that the court correctly announced the law applicable to the facts assembled in this record. Taking the instructions as a whole, they presented the questions of negligence and contributory negligence to the jury in accord with the principles herein announced. The jury could have found from the evidence that the appellant left the sprocket wheel and chain that killed young Busbee in an open space, unguarded and exposed in such a manner that children who were in the habit of congregating there for play or to get kindling wood might easily come in contact with them; that there was no one

at work on the outside of the box factory where the sprocket wheel was situated; that children in crowds, from three or four to a dozen, were in the habit of assembling there for such purpose; that shavings several times were piled around the sprocket wheel so that it could not be seen; that the chain running over the sprocket wheel would gather strings and carry them around with it; that Mack Busbee was run out of the lumber shed and box factory, and warned to keep off of the conveyor chain, and off the premises and away from the machinery because it was dangerous, but that he did not heed the warning and stay away, that he was not warned specifically of the danger of coming in contact with the sprocket wheel; that the chain and sprocket wheel on the outside of the building could have been made safe by being inclosed, or boarded in, at an expenditure of from $2.50 to $20.00; that this could have been done without interfering with the practical operation of the machinery; that Mack Busbee at the time of his injury was between seven and eight years of age; that appellant was fully cognizant of all these facts.

Therefore, we are of the opinion that the facts presented a case for the application of the doctrine of *Lynch* v. *Nurdin* and that there was evidence to sustain the verdict and judgment and the court did not err in refusing to instruct a verdict for appellant. It was a question for the jury.

Third: It is contended that the court erred in not permitting appellant to prove by certain witnesses, employees of appellant, that they notified appellee "to keep decedent away from the machinery; that he was in danger." Conceding that the appellant properly reserved its exceptions to the ruling of the court in excluding this testimony and that the testimony was competent, its only effect, and the only purpose of appellant in offering it, was to show that appellee was guilty of contributory negligence, and that young Busbee was upon appellant's premises without its consent and contrary to the instructions it had given his father to keep him away, in other words, that he was a trespasser. That was the theory upon which appellant tried its case below. But, as we have seen, the doctrine of *Lynch* v. *Nurdin* applies for the protection of children who are trespassing as well as those who are not. There was abundant evidence to prove that Mack Busbee was a trespasser. That

fact is conceded.   The ruling of the court in excluding the above testimony was not prejudicial.   See *Cook* v. *Houston Direct Nav. Co.,* 76 Tex. 353; *Barrett* v. *S. Pac. R. R. Co.,* 91 Cal. 296; *Price* v. *Atchison Water Co.,* 58 Kan. 551.

Fourth:   The appellant offered to prove by witness Wiley that he had run decedent off the chain several times before he was killed.   Conceding that the offered testimony was competent, the court did not err in excluding it.   The testimony was but cumulative of the testimony of several other witnesses that showed that young Busbee had been frequently driven off of the chain.   There could be no prejudicial error committed in not permitting, or in excluding, testimony that tended only to establish a fact that had been proved conclusively by other testimony.   As stated above, there was no doubt that young Busbee was a trespasser, and no doubt that he had repeatedly been warned of the danger of the machinery.   This was abundantly established by undisputed testimony that was admitted. Nevertheless, the question of his contributory negligence under the circumstances was for the jury, and was properly submitted.

Affirmed.

HART and KIRBY, JJ., dissenting.