STANDARD OIL COMPANY OF LOUISIANA *v.* DUMAS.

Opinion delivered April 13, 1931.

*T. M. Milling* and *Gaughan, Sifford, Godwin & Gaughan,* for appellant.

*McNalley & Sellers,* for appellee.

SMITH, J. On November 17, 1928, a suit was filed in the Union Circuit Court by the next friend of Medford Dumas, an infant six years of age, to recover damages to compensate a personal injury which he had sustained.

The cause was removed to the Federal District Court, where a demurrer to the complaint was heard and sustained, and the following order entered:

"The demurrer of the defendant to the complaint of the plaintiff in the above entitled cause having been argued by counsel and submitted, the court, being well and sufficiently advised in the premises, doth sustain said demurrer.

"Whereupon plaintiffs, by leave of court, enter a voluntary nonsuit herein without prejudice, and upon the entry of said nonsuit it is by the court ordered that said cause be and the same is hereby dismissed without prejudice, and that the defendant have and recover of and from the plaintiff all costs by the defendant in this behalf laid out and expended, for which execution may issue."

Thereafter, and within one year from the dismissal of the first suit, the plaintiff brought this action in the Union Circuit Court, based upon the same injury but containing allegations of negligence somewhat amplified, wherein the prayer for damages was reduced to $3,000. To this last suit the defendant therein interposed a plea of *res judicata*, based upon the order of the court set out above. This plea was overruled, and there was a trial before a jury, which resulted in a verdict and judgment for the plaintiff, from which is this appeal. For the reversal of this judgment it is insisted that the plea of *res judicata* should have been sustained, and that a demurrer to the complaint should also have been sustained, and that the testimony is insufficient to support the verdict.

We think the plea of *res judicata* was properly overruled. It is true the demurrer to the complaint was sustained by the learned judge of the Federal District Court, but it is true also that the plaintiff did not stand upon the sufficiency of his complaint. On the contrary, he obtained leave of the court to enter a voluntary nonsuit without prejudice, and the cause was thereupon dismissed without prejudice to another action. In other

words, while the court did find that the demurrer should be sustained, the court permitted a voluntary nonsuit to be taken, and the judgment of the court was that the cause be dismissed because the nonsuit had been taken, and that without prejudice.

At § 1204 of the chapter on Judgments, 34 C. J. 786, subtitle "Voluntary Dismissal or Discontinuance," it is said: "A voluntary discontinuance of a cause by plaintiff, or the dismissal of the action on his motion, does not as a rule amount to a judgment on the merits, and therefore will not bar a new action on the same subject-matter, especially if expressed to be without prejudice; and the same rule applies to the voluntary dismissal of a cross-bill, petition in intervention, or equitable defense. But an entry on the record that the debt has been paid and the suit ended is a bar to another action on the same debt.

"*Time of dismissal.* Even after the sustaining of a demurrer to the declaration or complaint, plaintiff may voluntarily dismiss his action, and, if he does so, the dismissal will not bar a new suit."

The allegations of the complaint are to the following effect. On October 7, 1927, the defendant, for the purpose of making and repairing tools and equipment used in the production of oil and gas, maintained and operated a machine and blacksmith repair shop at Kenova, Union County, Arkansas. The shop was housed in a one-story frame structure, with corrugated metal sidings, and the equipment thereof consisted in part of forges, lathes, motors, drilling devices, and other machinery for repairing oil field equipment. In the front of said building were three large doors, which opened upon an open concrete floor or platform, which was on the same level or grade as the land surrounding it and was about twenty feet square. The limits or edges of the concrete floor or platform were unmarked, and there was nothing to indicate to pedestrians where the boundaries of the traveled way ceased and those of defendant's platform began.

The plaintiff and his mother and next friend lived directly opposite the shop and about 120 feet distant therefrom, and the intervening space was level and open to and used by the public generally as a driveway and passageway. On the west side of said machine shop and said concrete floor, and extending from the west wall and edge thereof was also an open passageway, used by the defendant and the public generally as a driveway.

There was no railing, bar or other structure about said open concrete floor to deter or prevent any one from passing along said traveled way.

The operation of the lathes, forges, drills, and revolving machinery, with their whirring noises and flying sparks was attractive to small children and lured them to the concrete floor for the purpose of playing with the machinery and watching the revolving machinery and the flying sparks within said shop, and was especially attractive and inviting to the plaintiff, Medford Dumas, all of which was known to the defendant.

Notwithstanding defendant knew of the attractiveness of the concrete floor to small children, it left a solid steel shaft, about 4½ inches in diameter and about 6 feet long, in a partially upright position, with one end resting upon the concrete floor and the other end leaning against the front wall of the shop. Because of the length of said shaft and the small diameter thereof and the leaning position in which it was placed, it required but little pressure to cause it to fall, which fact was, or should have been, known to the defendant, and when the infant, Medford Dumas, pressed against the shaft it fell upon and severely injured him.

The testimony sufficiently sustains the allegations of the complaint to support the finding that the defendant was negligent in the particulars alleged, if the allegations charged actionable negligence, and this is the most serious question in the case.

In sustaining the demurrer to the complaint, which contained the allegations set out above but somewhat

less amplified, the learned judge of the Federal District Court filed an able opinion in which he gave his reasons for that action, and among the cases cited by him as requiring that holding was the case of *United Zinc & Chemical Co.* v. *V. Britt*, 258 U. S. 268, 66 L. Ed. 615, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28.

The opinion in that case was written by Mr. Justice Holmes, but there was a dissenting opinion written by Mr. Justice Clarke, in which Chief Justice Taft and Mr. Justice Day concurred, and there is a most exhaustive annotation of the case, extending from pages 34 to page 294 in 36 A. L. R. The division in the authorities is pointed out by Justice Clarke in his dissenting opinion, and is accentuated in the countless cases cited in the annotator's note, *supra.*

The learned district judge, was, of course, bound by the majority opinion in a manner that we are not, and we do not follow the majority opinion, as he was required to do, for the reason that the minority opinion more nearly accords with the decisions of this court on the subject.

In the case of *Central Coal & Coke Co.* v. *Porter*, 170 Ark. 498, 280 S. W. 12, the Van Britt case *supra* was cited as being conclusive of the question there raised. We there said: "In the case of *United Zinc & Chemical Co.* v. *Britt*, 258 U. S. 266, the court applied the rule 'as to attractive nuisances' in such manner as to withdraw its protection from children who were not attracted upon the land of another by the nuisance itself," and the reasoning of our Porter case shows our unwillingness to follow that rule. We there adhered to the rule announced in our earlier cases, that of *Nashville Lumber Co.* v. *Busbee*, 100 Ark. 76, 139 S. W. 301, being one of them. In this last cited case, at page 91 it is said:

"The doctrine (attractive nuisance) was recognized and approved by this court in *Brinkley Car Co.* v. *Cooper*, 60 Ark. 545, 31 S. W. 154, where Judge RIDDICK, speaking for the court, said:

"'The owner of land is not required to provide against remote and improbable injuries to children trespassing thereon, but he is liable for injuries to children trespassing upon his private grounds when it is known to him that they are accustomed to go upon it, and that from the particular nature and exposed and open condition of something thereon, which is attractive to children, he ought reasonably to anticipate such injury to children as that which actually occurs.' See same case in 70 Ark. 235, 67 S. W. 752. (*Brinkley Car Co.* v. *Cooper.*) Again in quite a recent case, *St. Louis-San Francisco Ry. Co.* v. *Williams,* 98 Ark. 72, 135 S. W. 804, 33 L. R. A. (N. S.) 94, the Chief Justice, speaking for the court, after stating the general rule as to trespassers, says: 'What is known as the doctrine of the "turntable cases" forms an exception to the rule.' And then he succinctly state the rule of the 'turntable cases' as follows: 'Where an owner permits to remain unguarded on his premises something dangerous which is attractive to children and from which an injury may reasonably be anticipated," he may be liable; quoting from *Brinkley Car Co.* v. *Cooper,* as set out above. Under the doctrine of *Lynch* v. *Nordin,* or the doctrine of the 'turntable cases,' it was for the jury to determine whether the machinery was dangerous and known to be such because it was attractive to and known to be frequented by children, and whether the appellant was guilty of negligence in leaving the machinery uncovered and unprotected. 'Whether or not premises are sufficiently attractive to entice children into danger, and to suggest to the defendant the probability of accident, is a matter to be determined by the jury.' 29 Cyc. 636; *Brinkley Car Co.* v. *Cooper, supra.*"

Under the testimony sustaining the allegations of the complaint, the jury could have found that the injured child was too young to understand and avoid the danger; that the defendant had reason to anticipate the presence of the child because of the attractiveness of the place to

children; that there was the likelihood of an accident from the leaning and insecure position of the shaft; and that a reasonably prudent person would not have so placed the shaft under the circumstances.

These issues of fact were submitted to the jury under instructions which are not complained of except that it is insisted that, under the undisputed evidence, there was no question for the jury. We think, however, that a case was made for the jury, and, as no error appears, the judgment must be affirmed, and it is so ordered.