## AFTON ELECTRIC COMPANY v. HARRISON

(No. 1918; February 18, 1936; 54 Pac. (2d) 540)

For the plaintiff in error the cause was submitted without oral argument upon the brief of *W. A. Muir* of Rock Springs.

The cause was submitted without oral argument on the brief of *Ivan S. Jones* of Kemmerer and *Thatcher & Young* of Ogden, Utah.

BLUME, Justice.

In this case Gean Harrison, as administratrix of the estate of Mack Harrison, deceased, recovered judgment from the Afton Electric Corporation, on account of the death of the deceased, in the sum of $3,500, from which judgment the Electric Corporation has appealed by way of the proceeding in error.

The deceased was a boy just under ten years of age. On May 18th, 1930, he was playing with one Carlos Proctor, a boy of about the same age, the game of Tarzan of the Apes. The deceased climbed an electric light pole, came in contact with uninsulated wires about fifteen feet from the ground, charged with a current of 2300 volts, and was electrocuted. The pole mentioned was about forty rods from the east side of Afton, a town of about 900 population, and stood upon the western brow of what is called Temple Bench. This bench is one of the foothills of the mountains west of Afton, rising by a steep incline of about fifty feet above the level of the town, the top of the foothill being somewhat level. The north part, where the pole stood, has an area of about 17 acres, and is about twice as long from north to south as from east to west. It is enclosed by a fence of three wires, except on the easterly side, where it is enclosed by a canal. It is hay and alfalfa land, though some of the testimony shows that the alfalfa field, nearest to the pole, did not quite reach the pole. Close to the pole, southwesterly, but mostly off the bench, grew some aspen trees, shrubbery and flowers, and children resorted there, frequently, for the purpose of picking flowers. There is considerable testi-

mony, mostly denied by witnesses for the electric corporation, that children frequently, and for many years prior to 1930, went onto the bench to play. A number of witnesses testified that some children were playing on the bench every day of the year. There was little skiing, however, before the death of the deceased, and no baseball or football. One boy testified that he went on the bench practically every day, and that he and many other boys played at and around the electric light pole in question, swinging from the cross bars attached thereto. No one, however, had climbed to the top of the pole, so far as the testimony shows, until the deceased did so in 1930. Bruce and Elizabeth Gardner, who occupied the bench, and were at least part owners thereof, never objected, so they testified, to the children playing on the bench. The Electric Company was a licensee, and had erected the pole with the consent of the owners. There is testimony indicating that the main owners of the electric company, the president and secretary thereof, had lived in Afton for many years, and were able to see the bench and the children playing thereon. The president of the corporation testified that he had seen children playing on the bench, usually in the north or south end, three or four blocks from the pole. It may be gathered from the testimony in favor of the administratrix that, while the bench was not what may be termed a regular playground, many children resorted thereto for one purpose or another quite frequently, and regularly.

The structure to which the uninsulated wires were attached consisted of two poles, each somewhat more than fifteen feet high. They sloped inward toward the top, and were about seven feet and seven inches apart at the bottom, and about four feet apart at the top. Toward the top were two horizontal wooden bars fastened to the poles so as to hold them together, the top bar being fourteen feet and seven inches from the

ground, and the second about one foot and seven inches below that. It was on this lower horizontal bar to which the deceased climbed, and in some way, by slipping or otherwise, probably threw his hands up and back and touched two of the wires, about two feet above him, and was by that act electrocuted. Close to the bottom of the poles were erected what are called juniper stubs, to serve as support to the poles. They were about six feet tall, about two feet from the poles, and were attached to the poles by several strands of wire in two different places, one of the fastenings being about twelve to fourteen inches from the ground, and the other from three to three and one-half feet from the ground. The deceased apparently first climbed to the top of one of these stubs, using the strands of wire already mentioned as a sort of ladder. There were further attached to the poles two wooden cross bars, about four feet or a little more from the ground on one pole and crossing over to the other pole to a distance of about nine feet from the ground. The deceased reached his destination, probably, by the help of these cross bars. The testimony shows that the poles were easily climbed by reason of these various attachments.

1. Under these facts, counsel for the administratrix assert that liability of the electric corporation is unquestioned under the doctrine of attractive nuisance. That doctrine was introduced in the United States by the case of Sioux City etc. Ry. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, the first of the so-called "turn-table cases," and has been extended to many other things. But it is not uniformly accepted. Some cases, laying stress upon the rights of property owners, hold that nothing short of willful or malicious injury will impose liability on the landowner to a trespasser, whether the latter be adult or child. In other words, an owner of property owes no duty to a trespasser, except to re-

frain from willful injury. 24 Ill. L. R. 250. The child in this case was undoubtedly a trespasser, at least so far as the poles were concerned, for they were owned by the electric corporation. Most of the courts, however, have repudiated the view that the property owners' rights are as extensive as above mentioned (see 45 C. J. 758, et. seq.; cases Michigan L. Review 506), and have thrown a protective arm round children of tender years. In order to make a property owner liable for an injury to a child, there must, of course, be a duty resting upon him, and a neglect of that duty. Such duty has been held to exist in the so-called attractive nuisance cases. Various theories are advanced as a basis thereof. We cannot go into a detailed discussion of them. A lengthy note of about 250 pages may be found in 36 A. L. R. p. 34, et. seq. See also 20 R. C. L. 79; 45 C. J. 758; 24 Ill. Law Review 248; 27 Ill. Law Review 459. Suffice it to say that some of the cases base liability on the theory of implied invitation; that is to say, where a man keeps a dangerous instrumentality on his premises, attractive to children, he thereby impliedly invites them to come onto his premises; that he accordingly must treat them as invitees, and take such care against injury as may be commensurate with the danger. This rule is clearly stated in Wolczek v. Public Service Company, 342 Ill. 482, 174 N. E. 577, as follows:

"If the owner maintains an agency of such a character and in such a place that he, by reason of his knowledge of those facts and the facts of knowledge common to all concerning the habits of children, naturally and reasonably knows, or should know or anticipate, that children will probably be attracted into the premises by that agency and will probably come upon his premises unless he warns them not to do so, such facts bring the case within the rule adopted in this and other states and constitute an implied invitation to children to do the thing which he should reasonably anticipate they

are likely to do. Under these circumstances the owner is required to use reasonable care to avoid injury to such children. That duty arises out of the invitation which the law implies and rests upon sound and just reason."

This theory, of course, is based on a fiction, fails ordinarily to correspond with the facts, inasmuch as an owner ordinarily wants children to keep off his premises, and the theory has been condemned as inadequate. Street's Foundations of Legal Liability, 160; 24 Ill. Law Review 249. So other cases state the rule of liability in other ways, and rest it upon the simple doctrine of negligence, without mentioning any implied invitation, and avoiding the term "attractive nuisance" entirely. In substance, though variously stated, they hold that a possessor owes a duty to trespassing children under certain circumstances, and that where such a possessor maintains an instrumentality thereon which is dangerous, and which from its nature is attractive to children, and he knows or should know that children of immature age, who do not know what a trespass is, congregate at the place of the dangerous instrumentality so as to be exposed to danger, he is bound, in the exercise of *social duty and the ordinary offices of humanity,* to take such care as is commensurate with the danger. Znidersich v. Utilities Company, 155 Minn. 294, 193 N. W. 449; Street, Foundations of Legal Liability, 160; Thompson, Negligence, Sec. 1030. Whether or not in such case the child is guilty of contributory negligence is ordinarily a question of fact, depending on the circumstances, particularly the age and intelligence of the child. Wolczek v. Public Service, 342 Ill. 482, 174 Ill. 577; Wallace v. Power Co., 204 Cal. 15, 266 Pac. 281. Some authorities seem to apply the rule only in case of children of a definite age. The rule is stated in Restatement of the Law or Torts, Sec. 339, as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know. that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

What is meant by the statement under subdivision (d) means evidently, as applied to this case, that if it was of so great an importance to the electric corporation to maintain the poles in question in the condition in which they were, so as to outweigh any danger to children, then no liability should arise; but that if the corporation could, without too great a burden, erect a different pole which would eliminate the danger to children, then it should do so.

Courts are not agreed as to what constitutes an attractive nuisance, or, if we want to avoid that term, the dangerous and attractive condition which constitutes, under certain circumstances, negligence toward children, and it is said that the tendency is to limit, rather than increase, the variety of objects to which the rule should be applied. 45 C. J. 772; Salt River Valley etc. Ass'n. v.. Compton, 40 Ariz. 282, 11 P. (2d) 842. The reason is not far to seek, for it is obviously unjust to make a property owner the perpetual watchman and insurer of the safety of all the children in the neighborhood. Salt River etc. Ass'n. v. Compton, supra. In United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 Sup. Ct. 299, 66 L. Ed. 615, the court said:

"Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon land owners to expect them and to prepare for their safety. On the other hand, the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them, although not to an adult.   *   *   *   There can be no general duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there."

In Erickson v. R. Co., 165 Minn. 106, 205 N. W. 889, 45 A. L. R. 973, it was said:

"To the irrepressible spirit of curiosity and intermeddling of the average boy, there is no limit to the the objects which can be made attractive playthings. In the exercise of his youthful ingenuity he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves."

There would seem to be no doubt, in accordance with the principle just discussed, that a bare electric light pole, not constructed so as to be easily climbed, but nevertheless climbed by a child who is injured by uninsulated wire, would, unless, possibly, under very peculiar circumstances, give no rise to any liability of the owner of the pole. Howard v. Transmission Co., 316 Mo. 317, 289 S. W. 597, 49 A. L. R. 1034; Miller v. Suburban Power Co., 41 Ohio App. 70; Mayfield etc.

Co. v. Webb's Adm'r., 129 Ky. 395; Burns v. City of Chicago, 338 Ill. 89, 169 N. E. 811, 814. Where a pole, however, is so constructed as to be easily climbed, a different situation is presented. Quite a number of cases have dealt with that subject. They are, however, in hopeless conflict even in such a situation. Cases which deny liability under these circumstances are Simonton v. Light & Power Co., 28 Tex. App. 374, 67 S. W. 530, where spikes served as a ladder from the bottom up; Grube v. Baltimore, 132 Md. 355, 103 Atl. 948, with similar facts; Burns v. Chicago, supra, overruling 248 Ill. App. 204, where conveniences existed to reach a ladder nine feet from the ground; Reddy v. City of Watertown, 53 S. D. 347, 220 N. W. 851, where spikes were inserted, serving as a ladder from the ground up; State ex rel. v. Trimble, 316 Mo. 32, 285 S. W. 455, 49 A. L. R. 1047, where cleats were fastened to the pole, serving as a ladder. To this list probably should be added Anderson v. Kansas City etc. Co., 127 Kans. 375, 273 Pac. 397; Howard v. Transmission Co., 316 Mo. 217, 289 S. W. 597, 49 A. L. R. 1034.

A number of cases distinguish between trees and artificial structures. See cases cited in Howard v. Transmission Co., supra, and Burns v. Chicago, supra, and note, 17 A. L. R. 837, holding that boys have a natural instinct to climb trees, and if they do, and are injured by an electric light wire running through or in close proximity to a tree, liability of the light company will or may follow. Other cases hold, in substance, that a pole, with convenient means to climb it, is, in a place where children congregate, an attractive nuisance, because of the natural instinct of boys to climb. Stedwell v. City of Chicago, 297 Ill. 486, 139 N. E. 729, 17 A. L. R. 829; Wolczek v. Public Service Co., 342 Ill. 482, 174 N. E. 577; Hurd v. Phoenix Co., 7 Boyce (Del.) 332, 106 Atl. 286; Klingensmith v. Traction Co., 18 Ohio

App. 290; Robertson v. Light & P. Co., 187 App. Div. 720, 176 N. Y. S. 281; Edwards v. Kansas City, 104 Kans. 684, 180 Pac. 271; McKiddy v. Electric Co., 202 Iowa 225, 206 N. W. 815; Clark v. Pacific Gas & Electric Co., (Cal. App.) 5 P. (2d) 58; Znidersich v. Utilities Co., 155 Minn. 293, 193 N. W. 449; McCoy v. Tex. P. & L. Co., (Tex. Comm.) 239 S. W. 1105 (if current so strong as to kill without coming in contact with wire); Johns v. Power & L. Co., (Tex. Civ. App.) 30 S. W. (2d) 549. In some of these cases the pole stood on public ground, but the same rule would seem to apply to a place where children are accustomed to congregate, especially if by the implied permission of the owner of the land, and this is, or should be, known by the owner of the pole.

In Clark v. Pacific G. & E. Co., supra, the court reviewed various authorities on the question whether a pole with a current, easily climbed, is or is not an attractive nuisance, finding that most of the cases holding the negative can be distinguished, and that only State ex rel. v. Trimble, and Reddy v. City of Watertown, supra, are in point, but that these cases are against the great weight of authority. In the case of Edwards Co. v. Kansas City, supra, the city's electric light pole was placed in close proximity to a telephone pole, which contained a ladder. The court, holding that the city was negligent under these circumstances, said in part:

"To avoid the consequences of its negligence and of the duty imposed on it, the city argues that the boy was a trespasser while upon the pole of the telephone company. The boy was a trespasser, but that did not relieve the city from its obligation to protect its wires by proper insulation at places where it should have anticipated that trespassing boys might come in contact with the wires. The petition alleges that the defendant knew, or by the exercise of proper diligence should have known, that boys were in the habit of climbing,

and did frequently climb, the pole in question, These facts are admitted by the demurrer."

Even in Salt River Valley Water Ass'n v. Compton, 39 Ariz. 491 8 P. (2d) 249, where a pole provided with means to climb it was involved, but in which no liability was held to exist on another ground, the court, after pointing out the diversity of holdings, stated as follows:

"The question is one of extreme difficulty. On the one hand, in our modern civilization in the Southwest high-power electric lines are almost as vital for the maintenance of prosperity as are the irrigation ditches and flumes of the Salladay case (Salladay v. Mining Co., 12 Ariz. 124, 100 Pac. 441), and a rule which would put a prohibitive cost on their maintenance should not be lightly adopted by the courts. On the other hand, the mere cost of giving to another that protection to which the law says he is entitled should never be accepted as an excuse for failure to provide it. After a careful consideration of all the cases and the present state of knowledge in the electrical industry, we are inclined to think that 'usual and customary precaution' therein, according to the latest and best practice, does not permit poles carrying high-power transmission electric lines in places easily and usually accessible to children to be constructed so as to be in effect unguarded ladders up which such children can climb in the ordinary manner, without exposing the owner to the usual liabilities of one who maintain an attractive nuisance."

We need not specifically review other authorities. Each case must, to some extent at least, be governed by its own facts. The poles in question had stood for fifteen years. No one, during that long period, had been injured by them. They stood in an enclosure; boys had played on the poles, swinging, but no one had ever seen anyone of them climbing to the top, making it somewhat doubtful as to whether it was climbed as easily by children as some of the witnesses testified, and whether or not it was attractive to children for

that purpose. The case, therefore, is not one in which it can be said that liability was clearly established. It would seem that the case is on the borderline. And, though the point is not free from doubt, we think that there is sufficient testimony in the case to make it a question of fact as to whether the electric corporation should be held liable. An uninsulated wire with a strong current is one of the most dangerous instrumentalities. While every adult knows this, that may not be true in the case of immature children. The structure, which in this case carried the deadly wires, was out of the ordinary. It was not a simple electric light pole in general use. Notwithstanding the fact that it stood in an enclosure, children played in its vicinity, and were permitted to do so year after year. There was no sign of warning, or danger, nor any other device to restrain children from playing about or on the structure. The officers of the electric corporation had lived in Afton for many years, and there is sufficient evidence to indicate that they knew or should have known of the children playing near or at the poles in controversy. We think, accordingly, after careful deliberation, that it was a question of fact whether or not the owner of the structure should have anticipated that it was attractive to children, and that some boy, permitted to play in the vicinity, might at some time follow his natural instinct and climb to the top of it so as to be exposed to the danger of the current in the wires. Young Harrison, of course, was of such age that he could not be held to have been guilty of contributory negligence as a matter of law. Children ordinarily stand on a different footing than adults in that respect. Railroad Company v. Stout, 17 Wall. 657, 660; Wolczek v. Public Service Co., supra. Hence the case was one for the jury, or the trial judge, sitting in its place.

Counsel for the electric corporation rely on the rule stated in 45 C. J. 767; United Zinc & Chemical Co. v.

Britt, 258 U. S. 268, 42 Sup. Ct. 299, 66 L. Ed. 615, and other cases, to the effect that no matter how attractive an object may be, unless it was the *attraction of that particular object* which lured the child to its injury, no liability exists. Thus it was held in Salt River Valley etc. Ass'n v. Compton, 39 Ariz. 491, 8 P. (2d) 249, that where a boy climbed a pole to get a bird's nest, the nest, and not the pole, was the particular attraction, and hence no liability for injury to the child existed. The case was decided by a unanimous court. Upon rehearing of the case in 40 Ariz. 282, 11 P. (2d) 839, two members of the court adhered to their former opinion, but one of the judges dissented, holding that the case was a proper one for the jury, and that the child was but a technical trespasser. The authorities are divided on this subject. The case just mentioned and the rule therein stated has caused a considerable amount of comment. 27 Ill. L. Review 459; 18 Iowa L. Review 286; 36 Harvard L. Review 113, 350. Dean Leon Green of Northwestern University, in 21 Mich. L. Review 521, states that the idea of "attractiveness" should have weight only in determining whether the landowner (here the owner of the poles) should have anticipated incursions by children. The court in Standard Oil Co. v. Dumas, 183 Ark. 616, 38 S. W. (2d) 17, refused to follow the rule. In Johns v. Power & Light Co., supra, the court held the light company liable where a boy climbed up an electric tower, though for the purpose of getting a kite. The court said in part:

"We do not think plaintiff's right to recover is precluded by the fact that the evidence shows that the special purpose which induced the boy to climb the tower was to extricate his kite. The fact that negro children had habitually played in the vicinity of and on this tower, and that such tower constitutes an attractive nuisance which was reasonably calculated to attract children to its vicinity, and had so attracted them for many years, was pleaded and sustained by the evi-

dence. The tower was not only peculiary attractive to boys of immature age, but we think the fact that steps were placed thereon, so that boys could easily and conveniently climb it, made it more attractive, and we think that, under all the circumstances, the defendant should have anticipated that some boy would have climbed it, either for the purpose of extricating a kite, or for some other youthful purpose."

See also 27 Ill. L. Review 460, and cases cited.

We need not determine whether the rule mentioned should be followed, for it could not in any event have any application here. The deceased did not climb the poles to get anything physical, like a nest or a kite. He climbed it simply while playing. The poles themselves were the attraction. He climbed them, as the imaginary Tarzan would have done, and it served his particular purpose excellently. It was clearly the poles which lured the child to his death.

The judgment, accordingly, is affirmed.

*Affirmed.*

KIMBALL, CH. J., and RINER, J., concur.