[Civ. No. 6370.   Fourth Dist.   Jan. 24, 1961.]

ROSALIO HERRERA, a Minor, etc., Appellant, v. SOUTH-ERN PACIFIC RAILWAY COMPANY (a Corporation) et al., Respondents.

443

W. W. McCray and Ernest F. Shelander for Appellant.

Archbald & Halde and Malcolm Archbald for Respondents.

SHEPARD, J.—Plaintiff herein brought this action against defendants for damages for very severe injuries sustained by plaintiff when he fell while riding as a trespasser on defendant railway's moving freight cars. From a judgment of nonsuit plaintiff appeals.

Plaintiff's sole ground of appeal is that the evidence, viewed in a light most favorable to plaintiff, was at least legally sufficient to have supported a conclusion that defendants were negligent; that such negligence was a proximate cause of the injury to plaintiff, and that the evidence did not compel the conclusion as a matter of law that plaintiff either assumed the risk of danger or was guilty of contributory negligence proximately contributing to the injury complained of.

## Nonsuit Rule

On a motion for nonsuit, the evidence must be viewed in the light most favorable to plaintiff, giving to plaintiff the

benefit of every applicable presumption of law and of every inference reasonably deducible from the facts proven. Conflicting evidence must be disregarded. With the evidence viewed in this light, nonsuit must not be granted unless there is no evidence to support a judgment in plaintiff's favor. (*Perera* v. *Panama-Pacific Intl. Exp. Co.*, 179 Cal. 63, 64 [2] [175 P. 454]; *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 837 [2] [161 P.2d 673, 164 A.L.R. 1]; *Sunset Milling & Grain Co.* v. *Anderson*, 39 Cal.2d 773, 779 [8] [249 P.2d 24].)

### Contributory Negligence as a Matter of Law

A similar rule is applied in those cases where the court is considering a motion for nonsuit on the ground of contributory negligence. The burden of proof is on the defendant to prove that the alleged contributory negligence existed and that it was a proximate cause of the injury complained of. As was stated in *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [3] [155 P.2d 826]:

"The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (See also *Fouraker* v. *Hill & Morton, Inc.*, 162 Cal.App.2d 668, 675 [5] [324 P.2d 527]; *Henley* v. *Atchison, T. & S. F. Ry. Co.*, 166 Cal.App.2d 554, 559 [1-2] [333 P.2d 338]; *Balthrop* v. *Atchison T. & S. F. Ry. Co.*, 167 Cal.App.2d 437, 441 [2] [334 P.2d 1041].)

### Testimony Adduced Under Code of Civil Procedure, Section 2055 Disregarded

The testimony of an adverse witness called by plaintiff under the provisions of Code of Civil Procedure, section 2055, is not binding on plaintiff. Any testimony adduced under such examination which is favorable to plaintiff must be considered on a motion for nonsuit, but any of such testimony contradicting or conflicting with plaintiff's evidence will be disregarded in passing on such motion, for it is the testimony of an adverse witness. (*Anthony* v. *Hobbie, supra,* [4].)

## FACTS

Thus viewing the evidence in the light most favorable to plaintiff, the uncontradicted facts shown by plaintiff's evidence are substantially as follows: The true name of defendant named as "Southern Pacific Railway Company," is Southern Pacific Company. Defendants, as part of their general railroad operation, were engaged in serving various business and industrial establishments in the vicinity of the city of Santa Ana. On May 23, 1958, defendants moved cars to the Holly Sugar Beet Factory, completed the switching operation at that point, and put together a string of 47 empty cars, which together with locomotive and tender, totaled a length of 2,186 feet. There was no caboose. The operating crew consisted of five men, including defendants engineer, fireman, two brakemen and conductor. At 5 p. m. daylight saving time ( 4 p. m. Pacific standard time), the string started toward the Santa Ana storage yard with intent to cut part of the cars from the string at another switching location before ending up for the night in the storage yard. The defendants fireman, engineer and two brakemen rode in the engine. The defendant conductor rode in an automobile, driving on a road parallel and several hundred feet distant from the railroad track, to again join the train at the point where the cut was to be made. The string proceeded toward the storage yard at about 8 to 10 miles an hour, through orange groves and open fields. There were no fences along the right-of-way except at a glass factory.

Plaintiff, aged 13 years, 8½ months, and three other boys, ranging in age from 10 to 18 years, had left their homes some blocks distant from the railroad track and walked across a field intending to visit a farm of a friend. They arrived at the railroad right-of-way and sat on a pile of logs, watching the cars go by. All of the boys, including plaintiff, had been warned not to get on the railroad cars because it was dangerous. Plaintiff's father, mother and brothers had all warned him on this subject. Plaintiff's father testified plaintiff was a bright boy, understood instructions and was obedient. Some two years prior to this time plaintiff's tests at school were dull normal, but the most recent tests (apparently taken in conjunction with all others of his class) placed him at a grade of 90, which a teacher testified was the dividing line between average and dull normal in intelligence. The sum total of the evidence rather clearly indicates that this was strictly a

language difficulty, but for purposes of viewing the matter on nonsuit, we will consider that the grade of "dull normal" was a true placement of his intelligence.

As the engine passed the boys, one of the crew saw them, but there was no apparent indication of any intent on their part to board the cars. The testimony of the three boys who testified (plaintiff did not testify nor give deposition evidence), that their intent to board the cars was formed on the spur of the moment, without previous discussion among themselves; that they all jumped up at once, ran to the cars and hopped aboard after most of the string had passed them. The testimony is that they boarded the seventh car from the last. As the string approached the place where the cut was to be made, one of the boys thought he saw a trainman approaching and yelled to the others to get off. One jumped from the right side of the cars, and two jumped from the left side of the cars. The evidence is completely silent as to exactly how plaintiff fell. With a companion he was riding between two of the cars, with one foot on each car. Whether he fell from this position or stumbled after he reached the ground is not shown by the evidence. No one saw him fall and he did not testify.

The first knowledge any of the trainmen had of the presence of the boys on the string was when the conductor, approaching to supervise the next cut, saw one boy jump off and run away. A few seconds later he saw plaintiff lying close to the track near a street crossing. There were no unusual movements of the train, and no claim or charge of negligence is made as to the manner of its physical operation. Plaintiff lost both lower legs and one entire arm.

The various members of the crew had from time to time during previous years, seen boys jump on and off the train on different occasions. The fireman had seen boys run out of an orange grove, hop on the cars, ride a short distance, and jump off. He had seen this four times in nine years. The brakeman had seen similar incidents five or six times in 1957 and 1958. The engineer had seen children watching and waving along the right-of-way, but saw no one board the cars. Another brakeman had seen two incidents of car hopping by boys. The conductor had seen two or three such incidents in three years. The record does not show whether these were duplications or separately cumulative incidents. No reports of them were made to the company.

There was testimony by retired trainmen that it would have been better railroad practice for the conductor to have ridden on the string. There was no evidence that on this kind of operation the conductor was required to be on the string at all times, nor was there any evidence that a conductor even when on a train is required to keep a constant lookout forward on both sides of the train. There was no evidence that the conductor or the trainmen in the locomotive could have seen the boys in the cars even if they had looked. The car movement here under consideration was not the ordinary train of engine, cars and caboose. It was a yard movement, without caboose.

### LIABILITY OF PROPERTY POSSESSOR TO TRESPASSERS

The varying expressions of courts generally in dealing with the liability of a possessor of land for injury or death to a child trespasser ultimately evolved into formulation of a set of rules on the subject, which is expressed in Restatement of the Law of Torts, section 339, and this statement has now been fully adopted and approved by the courts of California. It is quoted and commented upon with approval by many courts and law writers. It sets forth four conditions as a prerequisite to imposition of liability. The most recent authority is one written by Chief Justice Gibson in *King* v. *Lennen,* 53 Cal.2d 340 [348 P.2d 98], following the recent successive cases of *Reynolds* v. *Willson,* 51 Cal.2d 94 [331 P.2d 48], *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870], and *Garcia* v. *Soogian,* 52 Cal.2d 107 [338 P.2d 433]. The rule set forth on page 343 is as follows:

" 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.' "

## LIKELIHOOD OF TRESPASS

As to condition (a), respondents concede that on a motion for nonsuit the evidence is here sufficient to support a possible conclusion of a jury that the boys were *likely* to trespass on railroad property. The danger with which we are here concerned was, of course, not trespass on the railroad right-of-way but, rather, trespass on moving cars. For purposes of this case we consider condition (a) as having been met.

## UNREASONABLE RISK

Condition (b) primarily relates to knowledge by the owner of *unreasonable* risk to the boy. ▮▮▮ As was said in *Garcia* v. *Soogian, supra,* pp. 112-113 [6, 7, 8] :

"With respect to whether the circumstances of this case warrant recovery, it should be kept in mind that a possessor of land is not under a duty to prevent every possibility of harm but only to exercise due care as to those risks which he should realize are unreasonably great and threaten serious bodily harm in a way unlikely to be appreciated by children whose trespass he should foresee. ▮▮▮ The ability to appreciate danger varies, of course, with the age of the child, and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented. [Citations.]

". . . It may be, as plaintiff in effect testified, that, because it was getting dark, she did not see the glass before jumping, but defendants could not reasonably be required to foresee that there was any substantial likelihood that a normal child of more than 12 would not appreciate the danger of jumping over a large pile of building materials when darkness prevented sufficient perception of the nature of the obstacle."

The important problem in analyzing the application of condition (b) is *knowledge of the possessor* of the likelihood that trespassing children would not appreciate the danger. On this problem the court in *Davis* v. *Goodrich,* 171 Cal.App.2d 92, 97 [8] [340 P.2d 48] comments:

"Assuming, *arguendo,* that had the case gone to the jury and it was found that plaintiff was in fact unaware of the danger, the evidence would, nevertheless, have been insufficient to warrant a recovery. Before liability may be imposed under the attractive nuisance doctrine, evidence must be presented which would support a determination that the defendant knew or should have known that children who would not appreciate the danger involved were likely to trespass upon the property."

In other words, the question posed by (b) assumes that condition (a) has been satisfied and asks the further question whether the possessor should be charged with knowledge and expectation that such trespassing children would fail to realize or understand the danger involved and because of that would be *unreasonably* endangered. Dean Prosser, 47 California Law Review 427, sums up the problem in this terse language: "The question here is not whether in fact he does understand it, although that too has its importance. It is what the possessor of the land may expect of him."

It is difficult to conceive of a boy of 13 or 14 not understanding and appreciating the danger of hopping and riding a moving railroad car, particularly riding between the cars. Nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling, string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps of turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child.

We think under the facts of the case here at bar that defendants are not legally chargeable with prior knowledge that boys of the age of plaintiff would fail to understand and appreciate the danger of hopping on a moving string of cars. Condition (b) was not met. This would justify nonsuit.

### DISCOVERY AND REALIZATION OF DANGER

Condition (c) relates to discovery and realization of danger by the youth involved. In its application here we first must assume that conditions (a) and (b) have been met by plaintiff. Condition (c) then poses the question, did the plaintiff, because of his youth, fail to discover, or having discovered, did he fail to comprehend the dangerous risk involved by his act in jumping on and off the moving cars? Since no testimony of plaintiff himself was offered, we have only the uncontradicted testimony that the father considered him bright mentally, understanding and obedient, that a teacher had given him recent tests prior to the accident and considered him in the class of dull normal, that he had been warned by his father, mother and brothers to stay off the cars because they were dangerous; that the four boys sitting on a pile of logs near or on the right-of-way watched the cars going by; that suddenly without previous discussion or agreement and without apparent previous intention they jumped up, ran to the cars and hopped on. Three of these boys testified. All of

them said they realized it was dangerous. One of the train crew saw them as the engine went by. They were quiescent and showed no apparent intent to board the cars.

There is nothing here from which any reasonable mind could infer that plaintiff did not realize and appreciate that the act of hopping a moving string of cars was dangerous. We think plaintiff did not meet condition (c). This condition of the evidence would also justify nonsuit.

### BURDEN OF PROTECTION WEIGHED AGAINST POSSIBLE DANGER

The most difficult condition to apply in actual usage is (d). Whether or not the danger shown outbalances the burden of care necessary to furnish sufficient protection so as to compel the view that other measures than those provided must be taken will undoubtedly vary with the circumstances of each individual case. Cases will undoubtedly arise in the future where the record of injury prior to accident will make of the case a factual one for consideration by the jury, or may even go so far as to prove as a matter of law that the protection furnished in some case is inadequate. In the case at bar, however, there is no evidence that anyone was previously injured. This court would be naive, indeed, if it failed to remember that danger and the full understanding and fear of it are to boys and young men a part of the spice of adventure. Just what proportion of the boys of rural districts, familiar with slow-moving freight trains, have not at one time in their lives hopped such a train for a short ride, we cannot conjecture. We think it safe, however, to say that the proportion is substantial. How many outrider guards or fences would be required to effectively guard against such occasional outbursts of adventurous spirit does not appear, and we cannot guess. Certainly it would be tremendous.

From the evidence, we cannot say that plaintiff made any showing that the conductor's temporary absence from the string was known to plaintiff, nor that the conductor would in the ordinary course of his business have known of plaintiff's presence on the cars. While plaintiff does suggest other measures, there is no affirmative evidence that such measures would have stopped the acts here under attention. The evidence does not meet the requirements of condition (d).

Thus it is our view that the evidence fell short of meeting three of the basic requirements for recovery. The trial court's judgment was correct.

The contention of wilful misconduct made in the appeal

brief was not made to the trial court. It is not entitled to attention. However, we have reviewed the entire evidence in view of the contention, and find it entirely without merit.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1961.