Alexander Henry THUNDER HAWK, Jr., BY and THROUGH his Guardian Ad Litem, Georg JENSEN; by and through his Conservators, Alexander Henry Thunder Hawk, Sr., and Iona Thunder Hawk; and Alexander Henry Thunder Hawk, Sr. and Iona Thunder Hawk, individually, Appellants (Plaintiffs),

v.

UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Appellee (Defendant).

No. 91–279.

Supreme Court of Wyoming.

Dec. 29, 1992.

Rehearing Denied Feb. 3, 1993.

Ronald E. Triggs, Cheyenne, WY, for appellants.

Bradley T. Cave and Joe M. Teig of Holland & Hart, Cheyenne, WY, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT, and GOLDEN, JJ.

MACY, Chief Justice.

Alexander Thunder Hawk, Jr. (Alex) suffered a traumatic below-the-knee amputation of his left leg as a result of a rail yard accident. Alex, by and through his guardian ad litem and conservators, sued Union Pacific Railroad Company for negligent, grossly negligent, and willful and wanton misconduct. Alex's parents joined the lawsuit by asserting claims for Alex's medical expenses and for their own emotional trauma. The district court granted summary judgments in favor of Union Pacific on all claims.

We reverse in part, affirm in part, and remand.

The issues which we must address on appeal are:

(1) Whether the district court erred by granting a summary judgment adverse to Alex's claim that Union Pacific owed a duty of reasonable care to him under the attractive nuisance doctrine;

(2) Whether the district court erred by granting a summary judgment adverse to Alex's claim that Union Pacific acted in willful or wanton disregard for his safety on July 20, 1989; and

(3) Whether the district court erred by granting a summary judgment adverse to the parents' claims for negligent infliction of emotional distress and for Alex's medical expenses.

On July 20, 1989, Alex, who was then six years old, went with two friends to play in Crow Creek near the Ames Overpass in west Cheyenne, Wyoming. After playing for an undetermined period of time, Alex and his friends climbed up the embankment adjacent to the creek. Four sets of Union Pacific railroad tracks, which run longitudinally east and west, lie on top of that embankment. Alex crossed the northernmost tracks, as well as the adjacent tracks, and began playing on a train located on the third set of tracks. Unbeknown to Alex, the train on the third set of tracks, later identified as the NPSE1–20, had been stopped by the train operations manager for the purpose of removing transient riders. Once three transient riders were located and removed, the manager cleared the NPSE1–20 for departure. When the NPSE1–20 began to leave, Alex jumped from the car on which he was playing. His left leg landed in the path of the train and was severed just below the knee.

Alex, by and through his guardian ad litem and conservators, filed a complaint against Union Pacific on June 29, 1990, alleging that his injuries were proximately caused by Union Pacific's negligent, grossly negligent, and willful and wanton misconduct. The parents joined the complaint by asserting individual claims for Alex's medical expenses and for emotional trauma. Alex and his parents prayed for general, special, and punitive damages. Union Pacific answered the complaint by generally denying all allegations material to liability.

Following the initial pleadings, the parties engaged in extensive discovery. As

discovery proceeded, Union Pacific filed three summary judgment motions. Union Pacific first filed a summary judgment motion on May 21, 1991, to challenge the parents' claims for negligent infliction of emotional distress. Union Pacific filed a partial summary judgment motion on July 30, 1991, to challenge Alex's claim that Union Pacific owed a duty of reasonable care to him under the attractive nuisance doctrine. Finally, Union Pacific filed a summary judgment motion on March 10, 1992, to challenge Alex's claim that his injuries were proximately caused by Union Pacific's willful and wanton misconduct. Union Pacific filed supporting briefs with each motion, to which it attached relevant exhibits. Alex and his parents filed briefs in opposition to each motion, to which they attached relevant exhibits.

The district court granted each of Union Pacific's summary judgment motions. By an order entered on November 4, 1991, the district court granted the July 30, 1991, partial summary judgment motion. As to this motion, the district court ruled that Alex was a trespasser or at most a bare licensee to whom Union Pacific owed a duty not to willfully or wantonly harm and that the attractive nuisance doctrine could not be invoked under the facts of the case to elevate the standard of care. By an order entered on April 16, 1992, the district court granted the May 21, 1991, and March 10, 1992, summary judgment motions. As to these motions, the district court ruled that no evidence existed to show that Union Pacific breached its duty not to willfully or wantonly harm Alex and that the parents could not maintain a claim for negligent infliction of emotional distress under the undisputed facts of the case. The parents' claim for Alex's medical expenses and their joint claim with him for punitive damages necessarily fell as a summary judgment was granted against their underlying causes of action. Alex and his parents appeal.

■ A summary judgment is appropriate when no genuine issue of material fact exists to preclude disposition of a case as a matter of law. W.R.C.P. 56. A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Allmaras v. Mudge*, 820 P.2d 533 (Wyo.1991). The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704 (Wyo.1987).

■ This Court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as employed and used by the lower court. We examine the record in the light most favorable to the party opposing the summary judgment, giving that party all favorable inferences which may fairly be drawn from the record. *Baros v. Wells*, 780 P.2d 341 (Wyo.1989). If upon such review no genuine issue of material fact is found to exist, we will uphold the summary judgment under any legal theory properly supported by the record. *Equality Bank of Evansville, Wyoming v. Suomi*, 836 P.2d 325 (Wyo.1992). However, if a contrary finding is made, we will reverse the summary judgment.

### November 4, 1991, Order

The real battle in this case is over what duty of care Union Pacific owed to Alex on July 20, 1989. In its November 4, 1991, order, the district court determined that Union Pacific owed no duty to Alex other than not to injure him willfully or wantonly. Alex does not contend on appeal that he was other than a trespasser or bare licensee on the date in question; however, he does contend that the district court erred by granting a summary judgment adverse to his claim that Union Pacific owed a duty of reasonable care to him under § 339 of the RESTATEMENT (SECOND)

OF TORTS, popularly referred to as the attractive nuisance doctrine.[1]

Wyoming's seminal case on the attractive nuisance doctrine is *Afton Electric Company v. Harrison*, 49 Wyo. 367, 54 P.2d 540 (1935). In *Afton Electric Company*, Mack Harrison, a nine-year-old boy, climbed an electric light pole and was fatally electrocuted by uninsulated electric wires. His estate sued Afton Electric Company under the attractive nuisance theory and received a judgment of $3,500. 49 Wyo. at 372, 54 P.2d 540. Afton Electric Company appealed. Writing for the Court on appeal, Justice Blume explained that the attractive nuisance doctrine was an exception to the common-law rule that land possessors owe no duty to trespassers or bare licensees other than not to willfully or wantonly injury them. 49 Wyo. at 374–75, 54 P.2d 540. He noted that courts "have thrown a protective arm [a]round children of tender years" by requiring land possessors to exercise reasonable care for the safety of child trespassers under certain circumstances. 49 Wyo. at 375, 54 P.2d 540. Applying § 339 of the first RESTATEMENT OF TORTS,[2] the court concluded that whether Afton Electric Company should be held liable when it had reason to know that immature children played on or about an abnormally constructed electric light pole was a question for the fact finder. 49 Wyo. at 377 & 382, 54 P.2d 540. The court affirmed the judgment for Mack Harrison's estate. 49 Wyo. at 384, 54 P.2d 540.

Since our decision in *Afton Electric Company*, some courts have abandoned the common-law classifications of trespasser, licensee, and invitee in favor of imposing a general duty on land possessors of reasonable care under the circumstances. Wyoming, however, adheres to the common law. *Yalowizer v. Husky Oil Company*, 629 P.2d 465 (Wyo.1981); *Maher v. City of Casper*, 67 Wyo. 268, 219 P.2d 125 (1950). Therefore, whether or not the attractive nuisance doctrine applies in a child trespasser case remains as a valid concern.

▮ Our review of Wyoming case law reveals that this Court has encountered the attractive nuisance doctrine on at least three occasions since 1936. *Thomas By Thomas v. South Cheyenne Water and Sewer District*, 702 P.2d 1303 (Wyo.1985); *Stilwell v. Nation*, 363 P.2d 916 (Wyo. 1961); *Wilson v. City of Laramie*, 65 Wyo. 234, 199 P.2d 119 (1948). We have not, however, directly had the opportunity to adopt what is now the most widely accept-

---

1. The term "attractive nuisance" originated from early cases which espoused the theory that land possessors "impliedly invited" children onto their premises when they maintained thereon a dangerous condition or instrumentality which they knew or had reason to know would be attractive to children. Consistent with common-law rules of premises liability, the courts held under such circumstances that the land possessor would be held to a duty of due care. *See, e.g., Keffe v. Milwaukee and St. Paul Railway Company*, 21 Minn. 207, 18 Am.Rep. 393 (Minn. 1875). A land possessor would be held liable under the theory of "implied invitation," however, only when a child was injured by the particular condition or instrumentality which initially attracted him to the premises. *United Zinc & Chemical Co. v. Britt*, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1922).

Today, the term "attractive nuisance" is somewhat of a misnomer. Section 339 of the RESTATEMENT (SECOND) OF TORTS does not require that a child be attracted to the land possessor's premises by a dangerous condition or instrumentality and that he be injured by the particular attraction. Nor does § 339 rely upon the legal fiction of "implied invitation" to elevate a land possessor's duty of care to child trespass-

ers. Despite these recognized differences, the courts, including this one, continue to refer to injured-child-trespasser cases popularly as "attractive nuisance" cases.

2. "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
49 Wyo. at 377, 54 P.2d 540 (quoting RESTATEMENT OF TORTS § 339 (1934)).

ed statement of the doctrine. We take that opportunity today. The RESTATEMENT (SECOND) OF TORTS § 339 (1965) provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

■ As the attractive nuisance doctrine is an exception to the common law, it is strictly construed by the courts. *See Hughes ex rel. Hughes v. Union Pacific Railroad Company,* 114 Idaho 466, 757 P.2d 1185 (1988). To recover under § 339, a child trespasser must first demonstrate by a preponderance of the evidence at trial the existence of elements (a) through (d). If the child trespasser is successful in doing so, the duty of reasonable care under element (e) attaches to the land possessor. The child trespasser must then, as in any other negligence case, prove the elements of breach, proximate causation, and damages by a preponderance of the evidence.

In the instant case, our own review of the record discloses that genuine issues of material fact existed as to elements (a) and (b). Thus, the focus of the present dispute concerns the district court's determinations

as to elements (c) and (d). The district court granted a summary judgment in favor of Union Pacific on the basis of the following two findings:

Plaintiff fails to present specific facts showing that a genuine issue of material fact does exist as to [element] (c) of the doctrine; *i.e.,* that [Alex], because of his youth, did not realize the risk involved in playing on the trains. The depositions of [Alex], his mother and his father clearly show that [Alex] knew that the trains were dangerous.

Additionally, Plaintiff fails to present facts showing that a genuine issue of material [fact] does exist as to [element] (d); *i.e.,* that the utility of maintaining the railroad property condition and the burden of eliminating the danger are slight as compared to the risk to children.

Union Pacific advances both legal and evidentiary arguments as to why the district court's findings and order should be affirmed. Initially, Union Pacific asks this Court to hold, as a matter of law, that the attractive nuisance doctrine is inapplicable to trains because even young children appreciate that trains are dangerous. Exemplary of the cases relied upon by Union Pacific is *Herrera v. Southern Pacific Railway Company,* 188 Cal.App.2d 441, 10 Cal.Rptr. 575 (1961), wherein the court stated: "Nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling, string of railroad cars." 10 Cal.Rptr. at 580. *See also* Wade R. Habeeb, Annotation, *Railroad's Liability for Injury to or Death of Child on Moving Train Other Than as Paying or Proper Passenger,* 35 A.L.R.3d 9 (1971 & Supp.1992).

■ In contrast to *Herrera* and other similar cases, Alex was not attracted to a moving train "pregnant with warning of danger." 10 Cal.Rptr. at 580. Alex was attracted to and played upon the NPSE1–20, which, prior to the time of Alex's injury, was stopped in the rail yard. We are persuaded that it would be a bad policy to adopt a rule which would eliminate any legal incentive for railroads to take reason-

able measures to protect young children from foreseeable, train-related injuries.[3] We believe that the attractive nuisance doctrine strikes an appropriate balance between a railroad's land-use rights and Wyoming's policy of "throw[ing] a protective arm [a]round children of tender years." *Afton Electric Company*, 49 Wyo. at 375, 54 P.2d 540. We hold that a determination of whether a particular child appreciates the risk of playing on or about a train should be made on a case-by-case basis.

Union Pacific's first evidentiary argument is that the undisputed facts of this case support the district court's determination that, contrary to the requirement of element (c), Alex knew prior to his accident that trains were dangerous. Union Pacific directs our attention to the depositions of Alex and his parents which were submitted with its partial summary judgment motion. A review of Alex's deposition reflects that he admitted his parents warned him about trains and that he knew they were dangerous on the date of his injury. Alex's testimony is confirmed, in part, by his parents' depositions. They both testified that they told Alex that trains were dangerous.

Alex's counsel argues that Alex's deposition statement that he knew at the time of his accident that trains were dangerous should not be given preclusive effect. His counsel argues that Alex certainly had a clearer perspective of a train's potential danger when he was deposed, as he sat in a chair with a prosthesis strapped to his left leg, than he had some two years earlier when he boarded the NPSE1–20. His counsel also argues that the district court ignored contrary evidence which raised a genuine issue of material fact regarding Alex's knowledge of the danger. Our attention is directed to the depositions of Alex's primary resource teacher, his school social worker, and his regular school teacher, which he relied upon in opposing Union

Pacific's partial summary judgment motion. From these depositions, we discover that Alex was and continues to be learning disabled. He has trouble paying attention and suffers from a severe delay in language processing skills. His school teacher explained:

> [Alex is] the kind of child who you could say, ["]You're not to play on this tire swing with the water,["] if there's water below. And you can go through and explain the whole thing to him, and it may not have any meaning. And he's the child who, the next day, gets in trouble, and says, ["]I don't understand why I'm in trouble, I'm just playing out here for recess.["]

In light of Alex's learning disabilities, we do not believe that the fact that Alex had been warned generically that trains were dangerous can support a finding that he "realize[d] the risk" of intermeddling with the NPSE1–20 on the date of his injury, as required by element (c). *See* Annotation, *Comment Note.—Age and Mentality of Child as Affecting Application of Attractive Nuisance Doctrine*, 16 A.L.R.3d 25 at §§ 18(c), 21, and 27(b) (1967 & Supp.1992). We hold that sufficient evidence was presented, when viewed from the vantage point most favorable to Alex, to create a genuine issue of material fact as to whether Alex really understood the risks on July 20, 1989, involved in playing on or about trains.

Union Pacific's second evidentiary argument is that the district court correctly determined that, contrary to element (d), Alex failed to present evidence that "the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved." The fallacy of this argument is that Alex did not, under the circumstances of this case, have the burden of presenting evidence at this stage of the

---

**3.** Our position is apparently in accord with that of the Wyoming Legislature. Wyo. Stat. § 37-9–1101 (Supp.1992), enacted in 1991, provides:

> Except in cases of attractive nuisance, no person owning, operating, loading or unloading a railroad car or train shall be liable for any damages for the accidental death or injury of a person occurring while the person was riding the railroad car or train in violation of W.S. 37–12–104, or while the person was boarding or unboarding from the railroad car or train without the consent of the owner or operator of the railroad car or train.

proceeding. Orthodox summary judgment rules require the movant to first make a prima facie case that no issue of material fact exists before the burden shifts to the nonmoving party to come forward with conflicting evidence. *Boehm*, 748 P.2d 704. A review of the record reveals that Union Pacific failed to present any competent evidence on the burden-benefit issue with its partial summary judgment motion. Therefore, the burden to present conflicting evidence never shifted to Alex. On appeal, Union Pacific merely alleges that taking preventative measures would require an "enormous commitment of resources" and would require "hundreds of additional employees." These broad allegations come too late and are insufficient to rescue the district court's erroneous finding. We hold that element (d)'s burden-benefit analysis remains as a viable issue.

Genuine issues of material fact exist as to elements (a) through (d) of § 339. We reverse the November 4, 1991, order granting a partial summary judgment. Should the fact finder resolve the issues as to elements (a) through (d) in Alex's favor, Union Pacific will be held to a standard of reasonable care under element (e), and liability will be determined as in any negligence case.

### April 16, 1992, Order

Should the fact finder determine on remand that Union Pacific did not owe a duty to Alex of reasonable care under the attractive nuisance doctrine, the April 16, 1992, order granting a summary judgment will become particularly relevant. In this two-part order, the district court granted a summary judgment adverse to Alex's backup claim that Union Pacific, contrary to its duty owed to trespassers, acted in willful and wanton disregard for his safety on July 20, 1989. This order is also relevant to the punitive damages claim as punitive damages are only awarded for willful and wanton misconduct.

■ Union Pacific contends that the district court correctly granted a summary judgment on the willful and wanton misconduct issue because no evidence was present in the record to show that Union Pacific employees knew that Alex was on the NPSE1–20 on July 20, 1989. Union Pacific argues that, if the employees did not know Alex was present, they could not act in conscious disregard for his safety.

Alex counters that a genuine issue of material fact exists regarding the willful and wanton misconduct issue because Union Pacific had notice that children played on the tracks and yet failed to take measures to protect these children from injury. To support this position, Alex relied, in part, upon the deposition of a Union Pacific employee who saw and reported children in the rail yard on several occasions. Alex also relied upon the deposition and affidavit of an expert in railroad safety. The expert stated that it was his opinion that, in light of Union Pacific's knowledge, its policies demonstrated a "conscious disregard" for the safety of children. These policies included Union Pacific's failure to secure the rail yard, its failure to enforce existing operating rules for the detection of persons on or near trains, and its failure to supplement existing rules with a bulletin to warn crews of the potential presence of children.

In *Mayflower Restaurant Company v. Griego*, 741 P.2d 1106, 1115 (Wyo.1987) (quoting *Weaver v. Mitchell*, 715 P.2d 1361, 1369–70 (Wyo.1986)), we gave the definition of willful and wanton misconduct:

> "Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another."

*See also Mills v. Reynolds*, 837 P.2d 48 (Wyo.1992), and *Yalowizer*, 629 P.2d at 470 n. 6. We believe that Alex submitted evidence which, viewed from the vantage point most favorable to his position, was sufficient to create a genuine issue of material fact concerning Union Pacific's safety policy. We reverse that portion of the April 16, 1992, order which granted a sum-

mary judgment adverse to Alex's willful and wanton misconduct claim.

The parents ask us to reverse the second part of the April 16, 1992, order which granted a summary judgment adverse to their claims for negligent infliction of emotional distress. We recognized this tort in *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986). We limited its application, however, to those persons:

> (1) whose kinship to the accident victim would permit them to bring a wrongful death action; (2) who observed the infliction of serious bodily harm or death, or observed the serious bodily harm or death shortly after its occurrence but without material change in the condition or location of the victim; and (3) whose loved one did, in fact, sustain death or "serious bodily injury" as defined in the Wyoming Criminal Code.

*Contreras By Contreras v. Carbon County School District #1*, 843 P.2d 589, 592–593 (Wyo.1992) (discussing *Gates*, 719 P.2d 193).

■ In the instant case, the district court granted a summary judgment adverse to the parents because they failed to present evidence to create a genuine issue of material fact as to the immediacy requirement stated in element (2) of *Contreras By Contreras*. Our review of the record confirms this finding. Union Pacific relied upon the parents' depositions to support its May 21, 1991, summary judgment motion. These depositions revealed that both parents were first notified of Alex's injury at their respective places of employment and that neither parent saw Alex until after he had been transported to the hospital. The parents do not contend otherwise, but they do ask this Court to extend the tort to cover the circumstances of this case. We recently confronted and declined a similar request in *Contreras By Contreras*. We abide by our decision in that case and affirm that portion of the April 16, 1992, order which granted a summary judgment adverse to the parents' claims for negligent infliction of emotional distress.

■ As a final matter, we note that, in its summary judgment orders, the district court did not specifically address either the parents' claim for Alex's medical expenses or their joint claim with Alex for punitive damages. This was so because both claims, being derivative in nature, fell with the underlying causes of action. As Alex's causes of action have been revived in this appeal, the parents' derivative claim for medical expenses has been revived as well. The parents' claim for punitive damages, however, is not revived as it was derivative of their action for negligent infliction of emotional distress.

The November 4, 1991, order granting a partial summary judgment is reversed; the April 16, 1992, order granting a summary judgment is reversed in part and affirmed in part; and this case is remanded to the district court for proceedings consistent with this opinion.